## UNITED STATES v. HUNT.

1. In a suit upon the official bond of A., approved July 19, 1866, on which day he entered upon duty as collector of internal revenue, and continued therein until May 23, 1867, the United States offered in evidence a duly certified treasury transcript of his accounts.   The defendants objected to the evidence on the ground that the bond related solely to his second term of office, and that the balance shown by the transcript was the result of transactions which occurred during his first and second terms, and after the appointment and qualification of his successor.   In support of the objection, the defendants produced the bond of his successor, approved April 29, 1867. *Held*, that it was irregular to permit the defendants, in support of their objections, to put in evidence going to the merits of their defence, and that the bond did not show when A.'s successor entered upon duty.   2. That the transcript was admissible, inasmuch as it is entirely consistent with the description of the assessment lists of dates prior to July, 1866, and of those subsequent to May 23, 1867, that the taxes were actually received by him during his second term, and, were it otherwise, the objectionable items could, on mere inspection, be excluded from the account.

2. Receipts signed by A. for the aggregate amount of the alphabetical lists,
   although the latter show in detail the names of persons assessed and the
   amount severally due from each, are competent evidence for the United
   States, as.is also the original statement signed by him, showing the amounts
   collected and the amounts abated as uncollectible during the month, and
   those collected May 18, 1867.

ERROR to the Circuit Court of the United States for the
Southern District of Mississippi.

The case is stated in the opinion of the court.

*The Solicitor-General* for the United States.
*Mr. William L. Nugent* for the defendants in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This was an action brought by the United States upon the
official bond of Fidelio S. Hunt, as collector of taxes, under the
Internal Revenue Act. for the second district of Mississippi.
He died pending the suit, and it was revived against his exec-
utrix.   The other defendants were sureties.   The condition of
the obligation was that the said Hunt " shall truly and faith-
fully execute and discharge all the duties of the said office
according to law, shall justly and faithfully account for and
pay over to the United States, in compliance with the orders
and regulations of the Secretary of the Treasury, all public
moneys which may come into his hands or possession," &c.
It is alleged in the declaration that the bond was delivered
and approved on July 19, 1866, on which day Hunt entered
upon the discharge of the duties of his said office, and con-
tinued therein until on or about May 23, 1867.   The breach
alleged was that during that period he became indebted to the
United States in the sum of $139,463.15, received by him as
such collector for and on account of taxes due to the United
States, being a balance reported to be due from him upon
the adjustment of his account as such collector in the Treas-
ury Department, of which a duly certified copy was filed, and
which he had refused to pay.   The sureties filed joint pleas,
and the executrix pleaded separately.   The pleas were alike,
and amounted to a general denial of every allegation necessary
to constitute a liability.

There was a judgment for the defendants.   The United

States sued out this writ, and the errors which are assigned arise upon the rulings of the court upon questions of evidence, presented by a bill of exceptions.

The plaintiff offered in evidence the certified transcript of Hunt's account from the books of the Treasury Department. The certificate of the fifth auditor, accompanying it, states that he has examined and adjusted " an account between the United States and Fidelio S. Hunt, late collector for the 2d district of Mississippi, from July 19th, 1866, to May 23d, 1867, and find him chargeable as follows, under bond approved July 19th, 1866." The debit side of the account is, " to amount of assessment lists receipted for, per form 23½, viz." Its first item is dated July 28, 1866, and is to " amount receipted for as December, 1865, list." It also embraces similar debits, of the same and subsequent dates of entry, for lists of January, February, April, May, and June, 1866. The last five items on the same side of the account bear date, as to the entries, subsequently to May 23, 1867, but are for amounts receipted for as lists of January, 1866, April and May, 1867. The credit side of the account contains items of cash paid at dates subsequent to May 23, 1867, and also gives credit for amounts collected by his successors in office on lists he receipted for, and also for amounts collected by him as collector under the first bond on lists receipted for by him as collector under the second bond. This statement of account shows a balance due the United States of the amount claimed in the declaration.

The transcript included, as part of the statement of account and explanatory of it, a statement of differences, showing and accounting for the discrepancies between the balance exhibited by the collector's own account and that ascertained by the adjustment. From this it appeared that the balance due the United States by the collector's account to March 31, 1867, since which date he had rendered none, was $76,756.17, showing a difference to his debit of $62,706.98. This is explained, in part, by showing the whole amount of assessments of form 23½ charged under his first bond and under his second bond separately, which he had failed to give correct credit for, to the amount of $137,430.78; in part, by showing the amount of cash deposited by him under his first and second bonds respec-

tively, and that he had twice credited himself with $169,517.83 on account thereof; and by other errors, the whole amounting to $702,434.36. On the other hand, this is reduced to the sum of $62,706.98, the difference to be accounted for, by credits for taxes abated by the adjustment, by credits therein for collections by successors in office, on bills receipted for by him during his term, and by amount claimed and credited in his accounts as collections on cotton. A list of warrants covering into the treasury, the amounts of cash deposited, is appended, showing the amount of each, and on account of which bond it was paid. ·

, To the introduction in evidence of this transcript objection was made on the part of the defendants, "upon the grounds that the balance exhibited by the said account is the result of the transactions of both terms of the defendant's service, whereas the suit is upon a bond which covers only the transactions of the second term; and because it embraces transactions made by the collector after his removal from office and, after the appointment and qualification of his successor, and · the balance is in part made up of these transactions, occurring when the collector no longer sustained any official relation to the United States, and after the alleged breach had occurred." And in support of their said objections, the defendants by their attorneys, the bill of exceptions proceeds to state, introduced in evidence the bond of Martin Keary, the successor of the said Hunt as such tax-collector, showing that the same was approved on April 29, 1867. Thereupon the objections to the introduction of the certified account in evidence were by the court sustained, and the same was excluded, the court · holding that the said certified statement should stand and be . considered only as a bill of particulars annexed to plaintiff's declaration.

This ruling was excepted to and is assigned for error.

It was an irregularity to permit the defendant to interject into the plaintiff's case testimony upon the merits of the defence in support of his objection that the evidence offered was irrelevant, and the testimony interposed was not by itself sufficient to establish the date on which Hunt ceased to hold an official relation to the United States as collector, for it did not show when his successor actually entered upon the dis-

charge of the duties of the office. But passing by, without further comment, these minor errors, we find that the objection to the transcript of the account, as matter of evidence, is without foundation, either in fact or in law.

It was assumed on both sides, though there is no proof to that effect in the record, that Hunt had filled a prior term as collector, being his own successor, and it was admitted that his second term commenced on July 19, 1866. The objectionable items in the first part of the account charge him with amounts of assessment lists receipted for per form $23\frac{1}{2}$ on dates subsequent to the beginning of his second term, though being described as lists for specified months prior to July, 1866, it is argued that he could not be chargeable upon his second bond with those sums. But this does not follow; for it is entirely consistent with the description of the lists, that the collector actually received the taxes paid upon them, after the date of his second term, and just as he is charged with them in this account. And so, on the other hand, with similar items charged upon receipts of assessment lists, of dates subsequent to May 23, 1867, the alleged date when his second term expired. It is consistent with the nature of those charges that they were for moneys received on account of taxes paid on account of these lists, and received by him before the end of his second term. The account charges him with distinct sums of money collected by him. They are identified by reference to assessment lists for particular months, and then by the dates of his receipts to the government for the lists, upon form $23\frac{1}{2}$. No dates are traced in the account as those on which the taxes were actually collected by him, but the certificate of the Treasury Department declares it to be an account between the United States and the collector from the beginning to the end of the period covered by the bond in suit, and there is nothing on the face of the account which necessarily contradicts this statement. The certificate has the legal effect of making the transcript *prima facie* evidence of the fact of indebtedness which it certifies, unless upon the face of the account it necessarily appears to be otherwise.

But the ruling of the court in excluding the transcript is equally untenable upon the contrary supposition, that the

items on account of which the objection was sustained, were on their face such as could not be charged against the defendants upon the bond in suit. For, rejecting these items, there remained many others with which the collector and his sureties upon his second bond were admitted to be chargeable, and the transcript was clearly admissible in proof of these. The presence of the objectionable items could not prejudice the defendants, for on the supposition, they were separable from the remainder of the account by mere inspection. On the other hand, their presence might be important to the government, as explanatory of corresponding items upon the credit side of the account; particularly in view of the ruling of the court, which rejected the transcript as evidence against the defendants, but required it to remain upon the record as proof against the United States.

For the same reasons the subsequent ruling of the court must be held to be erroneous, by which it excluded the receipts of the collector on form $23\frac{1}{2}$, which constituted the items upon the debit side of the account. Even if the receipts alone were not sufficient in each case to charge the collector with the sums charged as taxes collected upon the assessment lists, nevertheless they were competent evidence which, by other testimony, might be made full proof, until overcome by a successful defence. The ground of the objection was that the form $23\frac{1}{2}$ was a receipt for alphabetical lists, showing in detail the names of persons assessed for taxes and the amounts severally due from each, and that these alphabetical lists were primary and better evidence to charge the collector than the receipt on form $23\frac{1}{2}$, which expressed merely the aggregate amount of the alphabetical lists. But the receipts offered were signed by the collector, on their face constituted a part of his official transactions, and fomed the very basis of the account against him upon the books of the Treasury Departments. The originals would be competent against him, for they are not secondary evidence, although they may show the existence of other documents more in detail. The law gives to a copy certified by the Treasury Department at least the same force in evidence which the original would otherwise have.

The ruling of the court rejecting the original statement signed by the collector, showing the amounts collected and the amounts abated as uncollectible during the month, and those collected on May 18, 1867, was likewise erroneous for the same reasons.

For these errors the judgment of the Circuit Court is reversed, with instructions to grant a new trial; and it is

*So ordered.*