Amos J. Bruce and Franklin Steele, Plaintiffs in Error, *v.* The United States.

A treasury transcript was admissible in evidence, in a suit brought by the United States against their debtor, although authenticated copies of the receipts which the debtor had given for money did not accompany the transcript. If an item was charged against him which the debtor disputed, it was in his power to obtain the original voucher; and if it appeared on the face of the account that the item charged did not come into his hands in the regular course of business, the transcript would not be evidence to sustain that charge.

The cases upon this point examined.

was not necessary for the United States to produce the commission of the debtor, or a certified copy of it. The surety was estopped from denying it.

Where there were two consecutive commissions and two sets of sureties, the latter set were responsible for all money which remained in the hands of the principal at the expiration of the first commission. If it was misapplied during the first term of office, it was incumbent upon the second set of sureties to show that it was so.

This case was brought up, by writ of error, from the circuit court of the United States for the district of Missouri.

The facts in the case are stated in the opinion of the court.

It was argued by *Mr. Vinton*, for the plaintiffs in error, and by *Mr. Cushing*, (attorney-general,) for the United States.

Mr. Chief Justice TANEY delivered the opinion of the court.
37 *

The writ of error, in this case, is brought upon a judgment obtained by the United States in the circuit court for the district of Missouri.

It appears that Bruce, one of the plaintiffs in error, was appointed agent for the Sioux tribe of Indians, in 1844, and gave the bond on which this suit is brought, for the faithful performance of his official duty. Franklin Steele, the other plaintiff in error, and John Atchison, were sureties in the bond; and Atchison having died, pending the suit in the circuit court, it abated as to him, and the judgment in favor of the United States was rendered against the plaintiffs in error. The breach assigned is, that there was a balance in Bruce's hands, on the 1st of July, 1848, of $10,191.69, which he refused to turn over and pay to the United States, when required to do so.

Bruce had held the same appointment for four years, before he received the one of which we are now speaking, and his account with government begins in May, 1840.

At the trial, the United States offered in evidence a transcript from the books of the treasury department, stating the account of Bruce from the time of his first appointment. According to this account, the balance above mentioned was due to the United States, but Bruce claimed various additional credits, amounting altogether to $6,931.68, which had been disallowed or suspended by the accounting officers, as appears by the closing account, usually called the statement of differences.

The United States further offered the transcript of a letter from the second auditor, whose duty it was to settle this account, addressed to Bruce, stating the balance due from him, according to the settlement in the auditor's office, and inclosing him the statement of differences above mentioned, and directing him to turn over to his successor in office the balance of the public money in his hands; and also offered the deposition of his successor, stating that he had made the demand, but that Bruce had failed to comply with it.

The defendants, therefore, objected to the admissibility of this evidence, but the court overruled the objection, and this constitutes the first exception in the case.

The objection is stated in general terms, and applies to the whole evidence offered by the United States, without pointing out the particular ground of the objection. But we understand from the argument here, that the defendants in the court below supposed that the transcript from the books of the treasury was not, of itself, evidence that he received the several sums of money charged against him, and that authenticated copies of his receipts ought to have accompanied the transcript.

But this objection cannot be maintained. The act of 1797

provides, that a transcript from the books and proceedings of the treasury, certified by the register, and authenticated under the seal of the department, shall be admitted in evidence. And the act of March 3, 1817, directs that all accounts whatever in which the United States are concerned, either as debtors or creditors, shall be settled and adjusted in the treasury department. The act makes the auditors and comptrollers, by whom the accounts in the war and navy departments are settled, officers of the treasury department. And the provision above mentioned in the act of 1797, in relation to transcripts from the books and proceedings in the treasury, is extended to the accounts of the war and navy departments; and the certificates of the auditors respectively charged with the settlement of these accounts, are to have the same effect as that directed in the former act of congress to be signed by the register.

The accounts in question belonged to the war department, during the period of Bruce's agency, and were adjusted and certified by the proper officers. There could, therefore, be no objection to the evidence on that score.

Nor do we see how any valid objection can be made to the items charged against Bruce in the transcript. The books of the accounting officer necessarily contain the charges against, as well as the credits of, the disbursing officer. The accounts could not be adjusted on the books in any other manner; and the transcript; or, in other words, the copy of the entire account as it stands on the books, (which must include debits as well as credits,) are made evidence by the law. Nor do we see any reason for restricting the words of the acts of congress within narrower limits than the words plainly imply. The accounts are adjusted by public sworn officers, bound to do equal justice to the government and the individual. They are records of the proper departments, and always open to the inspection of the party interested. And, after all, the transcript is only *primâ facie* evidence; and, if the party disputes any of the charges against him, it is in his power, by a proper application to the court, supported by sufficient evidence, to obtain the original vouchers on which he was charged, if necessary to his defence, and to show that the debit against him is erroneous.

If, indeed, it appeared on the face of the account that an item was charged against him which had not come to his hands in the regular and ordinary operations of the government, and of which, therefore, the accounting officers could have no official knowledge, the transcript would not be evidence to support that charge But no such debit is found in this transcript; for, according to the regular and ordinary practice of the government, in cases of this description, the agent receives

from his predecessor in the office the money and property remaining in his hands; and other funds, which it may be his duty to disburse, are sometimes sent through the general superintendent at St. Louis, sometimes by a treasury draft, forwarded directly to himself, and sometimes through the agency of a military or other officer of the government. And these advances pass through the proper offices of the treasury and war departments, (now through the department of the interior,) and the agent is charged upon his own receipts and warrants, issued in his favor.

This appears to have been done in the case before us. Every payment or advance to him is separately charged, and the time when it came to his hands, as well as the name of the person from whom he received it. The copies of his receipts, or of the vouchers for the charge, would have given him no further information; and the acts of congress above referred to do not require them to be annexed to or accompany the account, but, in plain and unambiguous terms, makes the transcript itself evidence.

Cases analogous to this have, on several occasions, come before the court, and have all been decided upon the construction of the acts of congress above stated. Smith v. United States, 5 Pet. 292; Coxe and Dick v. United States, 6 Ib. 202; and Hoyt v. United States, 10 How. 109, are all in point. And the cases of the United States v. Buford, 3 Pet. 29, and United States v. Jones, 8 Ib. 376, which are sometimes supposed to maintain a contrary doctrine, are perfectly consistent with the other decisions and with the one now given.

For, in the case of the United States v. Buford, (who was a deputy commissary,) the money had been placed in his hands by Morrison, who was a deputy quartermaster, without authority and contrary to his duty, and the accounting officers refused to credit it in Morrison's account. Upon application to congress, however, a law was passed authorizing the accounting officers to allow the credit, upon receiving from Morrison an assignment to the United States of all his right to the money mentioned in the receipt, which he had taken from Buford when he advanced him the money. Morrison made the assignment accordingly; and thereupon an account was stated on the books of the treasury, charging Buford as debtor to Morrison for the amount advanced to him. And a transcript from this account was offered in evidence. It is set out in the report of the case, and it is evident that this account was not within the letter or spirit of the act of congress. It certainly could not brove the receipt of Buford; for the whole transaction was outside of the regular operations of the government, and the

accounting officers could not be presumed to have any official knowledge of the unauthorized transactions between the parties.

And so, again, as to the case of the United States *v.* Jones, who was surety in the bond of an army contractor. The transcript contained charges against the contractor for bills of exchange, drawn by him and paid to other persons. The court regarded this operation as not within the ordinary mode of proceeding in the department, and that the accounting officers could not be presumed to have any knowledge of the drawing of those bills, or of their indorsement to others, and thereupon rejected these items. It will be seen, therefore, that the cases of the United States *v.* Buford and United States *v.* Jones are distinguishable from the present case, as well as from the other cases above referred to, and stand on different ground.

Indeed, none of the debits in the transcript appear to have been disputed by the plaintiffs in error, and no exception was taken to any one of them. The statement of differences between the accounting officers and Bruce shows that there was no difference as to the amount vith which he was chargeable. The difference consisted in a ariety of credits which he claimed, and which had been suspended or refused at the treasury; and the testimony offered by him, after his objection to the transcript, had been overruled, and the document admitted in evidence was altogether directed to support the credits he claimed, and not to impeach any one of the debits against him.

The circuit court were therefore right in overruling his objection to the testimony offered by the United States.

We proceed to the next exception.

After the testimony on both sides was closed, the plaintiffs in error asked for the following instructions to the jury, all of which were refused, and the direction which follows them given : —

" 1. That unless they believe, from the evidence, that Bruce was legally appointed and commissioned as such Indian agent, they will find for defendant, Steele; and they are further instructed that the commission, or a legally certified copy thereof, is the highest and best evidence thereof.

" 2. If the jury find from the evidence that Bruce was a defaulter at the time of the execution of the bond sued on, they will find for defendant, Steele, to the extent of such pre-existing default.

" 3. Defendant, Steele, is not liable ror any defalcation existing on the part of Bruce prior to the 29th of August, 1844.

" 4. Defendant, Steele, is not liable as the surety of Bruce

for any money received by Bruce before he was sub-Indian agent.

" 5. The original receipts of Bruce, or certified copies of the originals on file, is the best evidence of any moneys received by him, and the jury will disregard the transcript of accounts from the books, unless they believe it was out of the power of plaintiff to produce the receipts, or certified copies thereof."

These instructions were all refused, and " the court directed the jury, that if, when Bruce was reappointed agent, in 1844, he had moneys in his hands of the United States which he received as agent under his previous commission, then he was bound to apply and account for such moneys under the second commission, and his sureties are bound under the bond which is sued on. But if Bruce had appropriated the moneys received under the previous commission, to his own use, when this bond was given, then the first set of sureties are responsible for the moneys thus illegally appropriated, and these defendants are not liable, and the burden of proof is on the defendants to show that Bruce had illegally appropriated the moneys before the bond sued on was given."

We think the court were right in refusing the prayers, and in giving this instruction. In relation to the first instruction asked for, it certainly was not necessary for the government to produce the commission of Bruce, or a certified copy. The bond upon which the suit was brought recites that he was appointed Indian agent, and the obligors in the bond are therefore estopped from denying it.

And as to the 5th, it is but a repetition of the objection to the transcript, which we have already disposed of.

And as relates to the 2d, 3d, and 4th, we think the court was right in refusing them, and giving the instruction as above stated. When Bruce received his second commission, if any money or property which he received in his former term of office still remained in his hands, he was bound to apply and account for it, under the appointment he then received.

The terms of the bond clearly require it, and his sureties are bound for it. It was so much money in his hands to be disbursed and applied under his second appointment. Indeed, if it were otherwise, the government would have no security for it. For, if it was not wasted or misapplied during his first official term, but still remained in his hands to be applied according to his official duty, the sureties in his first bond would not be liable. For there would in that case be no default or breach of duty in that term of office ; and if afterwards wasted or misapplied, it would be a breach of duty in that official term for which Steele was one of his sureties.

Undoubtedly the sureties in the second term of office are not responsible for a default committed in his first. But if any part of the balance now claimed from him was misapplied during that period, it was incumbent on the plaintiffs in error to prove it. No officer, without proof, will be presumed to have violated his duty; and if Bruce had done so, Steele had a right, under the opinion of the circuit court, to show it and exonerate himself to that amount; but it could not be presumed, merely because there appears by the accounts to have been a balance in his hands at the expiration of his first term.

We see no error in the opinions of the circuit court, and the judgment must therefore be affirmed.

### *Order.*

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Missouri, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said circuit court in this cause be and the same is hereby affirmed, with interest at the same rate per annum that similar judgments bear in the courts of the State of Missouri.