## UNITED STATES *v.* PINSON.

The account of a delinquent revenue officer or other person accountable for public money, as finally adjusted by the proper officers of the Treasury Department, is not admissible as evidence under sect. 886, Rev. Stat., unless it be certified and authenticated to be a transcript from the books and proceedings of that department.  A certificate, therefore, which states that the transcript, to which it is annexed, is a copy of the original on file is not sufficient, that . being the form used in reference to mere copies of bonds, contracts, or other papers connected with the final adjustment.

ERROR to the Circuit Court of the United States for the. Western District of Tennessee.·

The facts are stated in the opinion of the court.

*The Solicitor-General* for the United States.

*Mr. B. M. Estes* and *Mr. Henry T. Ellett, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action against the executrix of one of several sureties on the official bond, executed April 9, 1858, of Miles H. Morris, formerly a purser in the navy.  The government claims that deceased failed to account for certain clothing received by

him as purser on board the ship "Vandalia," and for a large amount of public money received by him as purser and disbursing officer on board the ship "Seminole."

The bill of exceptions states that the district attorney, after reading in evidence a certified copy of the bond of Morris, as purser in the navy, offered to read to the jury, as evidence in behalf of the United States, "the account of Miles H. Morris, as purser in the United States Navy, as certified by the Treasury Department." The account, thus offered, is made up of several distinct papers, as follows: Brief to accompany the account of Miles H. Morris, late paymaster U. S. Navy; abstract of expenditures of Miles H. Morris, paymaster U. S. S. "Vandalia;" abstract of clothing and small stores; abstract of expenditures of Miles H. Morris, paymaster U. S. S. "Seminole;" statement of the account of Miles H. Morris, a purser U. S. S. "Vandalia," from May 19, 1858, to Jan. 6, 1860; statement of the account of Miles H. Morris, paymaster U. S. S. "Seminole," from May 1, 1860, to March 12, 1861, report 4,805; statement of the account of M. H. Morris, late paymaster U. S. Navy, supplementary to report 4,805; statement of the account of M. H. Morris, late paymaster U. S. Navy, supplementary to report 161 A.

To these abstracts and statements is appended a certificate or communication by the Fourth Auditor in the Treasury Department, under date of Jan. 19, 1874, addressed to the Second Comptroller of the Treasury, stating that he had examined and adjusted the account of Morris, late paymaster United States Navy, supplementary to his account of "Seminole" report 161 A, and found that there was due from him to the United States the sum of. $5,922.60 under certain heads of appropriations which are specified, and also that the statements and accounts showing such balance were therewith transmitted to the Second Comptroller for his decision thereon. There is also appended a statement by the Second Comptroller, under date of Jan. 20, 1874, to the effect that he admitted and certified the balance reported by the Fourth Auditor.

Prefixed to the foregoing papers is the certificate of the Secretary of the Treasury, under the seal of that department, to the effect that William B. Moore, who certified the

"annexed transcript," was then, and at the time of doing so was, deputy Fourth Auditor of the Treasury, and that full faith and credit were due to his official attestations.

Following that of the Secretary was a certificate in these words: —

> "TREASURY DEPARTMENT, FOURTH AUDITOR'S OFFICE.
> "July 23, 1875.

"Pursuant to an act of Congress to provide for the prompt settlement of public accounts, approved 3d of March, 1817, I, William B. Moore, deputy Fourth Auditor of the Treasury Department, do hereby certify that the annexed transcripts are true copies of the originals on file in this office.   WM. B. MOORE."

To the reading of the foregoing "account" or "transcript," the defendant objected, and the objection was sustained, to which ruling an exception was taken by the government. Under instructions from the court, a verdict was then returned for the defendant.

Whether the papers offered in evidence by the government are competent evidence in support of its claim, is the general question presented for our determination.

By the law, as it has long existed, it is the duty of the Fourth Auditor of the Treasury Department to receive and examine all accounts accruing in the Navy Department, or relating thereto, and after such examination to certify the balances, transmitting such accounts, with the vouchers and certificates, to the Second Comptroller for his decision thereon. Rev. Stat., sect. 277. Upon their examination by the latter officer it becomes his duty to certify the balance arising thereon to the Secretary of the Navy. Id., sect. 273. The statute also provides that "the auditors charged with the examination of the accounts of the departments of war and of the navy shall keep all accounts of the receipts and expenditures of the public money in regard to those departments, and of all debts due to the United States or moneys advanced relative to those departments; shall receive from the Second Comptroller the accounts which shall have been finally adjusted, and shall preserve such accounts, with their vouchers and certificates; and record all requisitions drawn by the secretaries of those depart-

ments, the examination of the accounts of which has been assigned to them." Id., sect. 283.

When an account has thus been examined, passed upon, and the balance certified, it is *adjusted*, as well within the meaning of the section last quoted, as of sect. 957 of the Revised Statutes. The latter section, in part, provides that " when suit is brought by the United States against any revenue officer or other person accountable for public money, who neglects or refuses to pay into the treasury the sum or balance reported to be due to the United States, upon the adjustment of his account, it shall be the duty of the court to grant judgment at the return term, upon motion, unless the defendant in open court (the United States attorney being present) makes and subscribes an oath that he is equitably entitled to credits which had been, previous to the commencement of the suit, submitted to the accounting officers of the treasury and rejected ; specifying in the affidavit each particular claim so rejected, and that he cannot then safely come to trial. If the court, when such oath is made, subscribed, and filed, is thereupon satisfied, a continuance until the next succeeding term may be granted." This section is referred to for the purpose of showing as well the importance attached to the final adjustment of accounts by the proper officers of the treasury, as the difficulty in going behind or disputing the correctness of such adjustment when made the basis of a suit instituted to recover the balance reported to be due the government.

We come now to sect. 886 of the Revised Statutes, upon the construction of which depends the solution of the question to which we have already referred. That section declares that " when suit is brought in any case of delinquency of a revenue officer, or other person accountable for public money, a transcript from the books and proceedings of the Treasury Department, certified by the register, and authenticated under the seal of the department, or, when the suit involves the accounts of the War or Navy Departments, certified by the auditors respectively charged with the examination of those accounts, and authenticated under the seal of the Treasury Department, shall be admitted as evidence, and the court trying the cause shall be authorized to grant judgment and award execution

accordingly. And all copies of bonds, contracts, or other papers relating to or connected with the settlement of any account between the United States and an individual, when certified by the register, or by such auditor, as the case may be, to be true copies of the originals on file, and authenticated under the seal of the department, may be annexed to such transcripts, and shall have equal validity and be entitled to the same degree of credit which would be due to the original papers, if produced and authenticated in court: *Provided*, that where suit is brought upon a 'bond or other sealed instrument, and the defendant pleads *non est factum*, or makes his motion to the court, verifying such plea or motion by his oath, the court may take the same into consideration, and, if it appears to be necessary for the attainment of justice, may require the production of the original bond, contract, or other paper specified in such affidavit."

This section embodies the provisions found in the second section of the act of March 3, 1797 (1 Stat. 512), providing more effectually for the settlement of accounts between the United States and receivers of public money, and the eleventh section of the act of March 3, 1817, relating to the prompt settlement of public accounts. 3 id. 367.

It will be observed that sect. 886 refers to " transcripts from the books and proceedings of the Treasury Department," as well as to " copies of bonds, contracts, or other papers relating to or connected with the settlement of any account between the United States and an individual." The former, certified and authenticated as required by the statute, " shall be admitted as evidence," while the latter, certified and authenticated in like manner, "may be annexed to such transcript," and have "equal validity, and be entitled to the same degree of credit which would be due to the original papers, if produced and authenticated in court." Commenting upon similar language in the act of March 3, 1817, this court, in *Smith* v. *United States* (5 Pet. 300), which was a suit against a paymaster in the army for a balance alleged to be due to the government, said, that under the head of " a transcript from the books and proceedings of the Treasury Department " were included " charges of money advanced or paid by the department to the agent, and claims

suspended, rejected, or placed to his credit." These all appear, said the court, upon the "books" of the department; and the decision on the vouchers exhibited, and the statement of the amount due, constitute, in part, the "proceedings" of the treasury. The court, in that case, recognizes the transcript from the books and proceedings of the department as a document which shows the account of the government debtor, as finally adjusted by the proper officers, and as it appears upon the records of the department. Such adjusted accounts, says Mr. Chief Justice Taney, necessarily show the charges against as well as the credits of the disbursing officer. They "could not," said he, "be adjusted on the books in any other manner, and the transcript, or, in other words, the copy of the entire account, as it stands on the books (which must include debits as well as credits), are made evidence by the law. Nor do we see any reason for restricting the words of the act of Congress within narrower limits than the words plainly imply. The accounts are adjusted by public sworn officers, bound to do equal justice to the government and the individual. They are records of the proper departments, and are always open to inspection of the party interested." *Bruce* v. *United States*, 17 How. 437.

Unless, therefore, the transcript offered, as evidence, upon the trial below is certified by the proper officer, and authenticated under the department seal, to be "a transcript from the books and proceedings of the Treasury Department," it is not such a transcript as the statute makes evidence.

We are of opinion that the transcript offered is not certified and authenticated to be of that character which the statute declares shall be admitted as, in itself, evidence. The certificate of the deputy Fourth Auditor is that the "transcript" thereto annexed, that is, the statement and abstracts heretofore described, are "true copies of the originals on file" in his office. That is precisely such a certificate as the officer would make in reference to mere copies of bonds, contracts, or other papers relating to or connected with the final adjustment of the account, for the purpose of giving to such copies the same effect as would be accorded to the originals if produced and authenticated in court. If the papers offered, and excluded by the court below, constitute, in fact, the final adjustment of

Morris's accounts, the certificates should not have described them as copies of originals on file, but as transcripts of the books and proceedings of the department. The statute, for the convenience of the government in a certain class of suits against delinquent public officers, makes an alteration of the established laws of evidence. The government, by a statutory rule which the courts must enforce, denies to defendants in such suits the benefit of the recognized principles which, at common law, govern the proof of essential facts in issue, and it should not be permitted to claim an exemption from the fair and legitimate operation of that rule. It may be true, as the certificate of the deputy Fourth Auditor states, that the papers offered are true copies of some originals on the files of his office; for instance, of the original drafts of settlement. But it does not necessarily follow that they present an accurate or correct statement of the final settlement or adjustment of the accounts as shown on the books and in the record of the proceedings of the department. Such originals may never have become a part of the books and proceedings of the department, in the sense of the law, or within the meaning of our former decisions. *United States* v. *Buford,* 3 Pet. 12; *Smith* v. *United States,* 5 id. 292; *Cox* v. *United States,* 6 id. 172; *United States* v. *Jones,* 8 id. 375; *Gratiot* v. *United States,* 15 id. 336; *Hoyt* v. *United States,* 10 How. 109; *Bruce* v. *United States,* 17 id. 437. That the abstracts or statements offered and excluded may, upon their examination, seem to the court to be the final adjustment of Morris's accounts is not sufficient. Upon that question the court might be mistaken in any conclusion it should reach, or it may err in the inferences drawn from the items of the accounts. What the statute meant was, that the official certificate of the officer, charged with the examination of the accounts, should be of such character as to give the court, as well as the parties, an assurance that the transcript offered as evidence to support the claim of the government exhibits, in fact, the final adjustment of the accounts of the delinquent officer, as shown, not by mere copies of original papers on the files, but upon the books and records of the department.

This question, in a somewhat different form, arose in *Smith*

*v. United States, supra.* There, as here, the auditor certified that the transcripts offered in evidence were " true copies of the originals on file " in his office, and, in that form, the certificate narrowly escaped condemnation. The majority of the court, evidently with some hesitation, held the transcripts admissible in evidence upon the ground that the bill of exceptions stated that the documents, offered as evidence and excluded, purported to be transcripts " from the books and proceedings of the Treasury Department." Upon that point three of the judges dissented. The grounds of the dissent are stated in the opinion of the court. The minority held that the certificate could be regarded as referring only to papers the originals of which were on file; that the books of the department could not be said to be on file, nor were copies from them copies from originals within the meaning of the statute; that it was a copy from the books and proceedings in the Treasury Department which was made evidence, and not mere copies of papers, though on the files, on which the rough draft of settlement may have been entered.

The bill of exceptions does not bring the present case, upon this particular point, within the ruling in *Smith* v. *United States*. There is no statement in the bill here that the papers offered and excluded were transcripts from the books and proceedings in the treasury, but only that they constituted the " account of Miles H. Morris, as purser of the United States Navy, as certified by the Treasury Department." This language is not equivalent to that which the statute requires in order to make the transcript evidence, and we are not disposed to extend the rule announced in *Smith* v. *United States.* The statute is founded in justice as well as in the necessities of the government when compelled to institute suits against delinquent public officers. Its provisions are easily understood, and it is not at all difficult to meet the manifest object Congress had in enacting them. When the government desires, in suits against a delinquent officer accountable for public money, to use the final adjustment of his accounts as evidence, the certificate of the officer should show, not, necessarily, in the very words of the statute, but plainly, and not by mere inference, that the transcript offered is from the books and proceedings of the

department; in other words, that such transcript presents the account of the delinquent as finally adjusted by the proper officers of the government, and spread upon the records of the department.

Without stopping to consider other points raised by counsel in support of the ruling below, it is sufficient to say, that, for the reasons given, the court below did not err in excluding from the jury the transcripts offered by the government.

*Judgment affirmed.*

MR. JUSTICE SWAYNE and MR. JUSTICE BRADLEY dissented.