## HARVEY v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 9, 1899.)

### No. 474.

UNITED STATES MARSHAL—ACTION ON BOND—TRANSCRIPT OF ACCOUNT AS EVIDENCE.

A fragmentary and incomplete transcript from the books of the treasury department containing the accounts of a former United States marshal, which covers only a portion of his term, and contains no item of his accounts during the last two years of his incumbency, is insufficient to warrant a judgment against his sureties in an action brought 33 years after his term expired, and long after his death, for the items of expenditure shown thereby to have been claimed by him and rejected or suspended by the department.

Gilbert, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of California.

White & Monroe, for plaintiff in error.

F. P. Flint, for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. By this action, which was commenced in the court below on the 1st day of September, 1892, the United States sought to recover upon the official bond of one Edward Hunter, given as United States marshal for the Southern district of California. The bond was executed and approved on the 23d day of May, 1855, in the penal sum of $20,000, for the faithful performance of the official duties of the principal obligor. B. D. Wilson and John G. Downey were the sureties on the bond, and the action as brought was against them as well as the principal, Hunter. It is alleged in the complaint among other things, that Hunter was the marshal of the United States in and for the Southern district of California from and including the 23d day of May, 1855, to and including the 4th day of August, 1858, during which time he received into his possession and custody as such marshal sundry large sums of money belonging to the United States, appropriated from its treasury for the expenses of the courts of the United States, and part of which was not disbursed or returned to the United States as required by law; that the official accounts of Hunter as such marshal were at various and stated times prior to September 13, 1859, adjusted by the treasury department of the United States in conformity with the laws and the rules and regulations of the department, and that on the day last

mentioned, to wit, September 13, 1859, it was ascertained by the treasury department that there was then due from the said Hunter to the United States, on account of the moneys received by him in his official capacity as marshal, the sum of $7,614.02, which he failed and refused to pay over, by reason of which alleged breach the govern-. ment asked for judgment on the bond against the defendants in the suit for the said sum of $7,614.02, together with the further sum of $66.29, alleged forfeited commissions theretofore allowed the said Hunter, with interest on the first-named sum from December 4, 1855. Although Hunter and Wilson were both made parties defendant to the suit, it was stipulated at the trial that each of them died long prior to its institution. Downey, however, was then alive, and service of summons was made upon him. He appeared in the action, and answered the complaint. Subsequently he died, and on July 26, 1895, letters of administration on his estate were issued to J. Downey Harvey, who is the plaintiff in error here. Upon the subsequent dis-covery of the last will and testament of John G. Downey, the plain-tiff in error became administrator of his estate, with the will annexed. The original answer of Downey admitted the execution of the bond sued on, but denied the alleged indebtedness, and the alleged failure on the part of the principal in the bond to pay over any public moneys that came into his hands as required by law, and also alleged that the co-surety, B. D. Wilson, died testate in the county of Los Angeles, state of California, on the 11th day of March, 1878, and that on the 1st day of April, 1878, his last will and testament was regularly ad-mitted to probate by the probate court of that county, and that let-ters testamentary were on April 3d of the same year duly issued to his executors; that at that time, and during all the times involved in this action, the laws of California required every executor and ad-ministrator, immediately after his appointment, to cause to be pub-lished in some newspaper of the county, if there be one, and, if not, then in such newspaper as may be designated by the probate court, a notice to the creditors of the decedent, requiring all persons having claims against him to exhibit them, with the necessary vouchers, to the executor or administrator at his place of residence or business, to be specified in the notice, with certain other provisions not neces-sary to be stated, and also declared that "no holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator," with an excep-tion not pertinent to the present case; that the executors of the estate of the said Wilson duly gave the notice to creditors required by the laws of California, and that no claim was ever presented against the said estate by the United States by reason of the bond sued on, and that the defendant Downey had no notice of any claim upon the part of the government of the United States, and no knowl-edge that any such claim would or could be made, until more than 10 years after the expiration of the time within which claims might have been presented against the said estate of the said Wilson; that at the time of the death of the said Wilson, and for more than 20 years prior thereto, he was entirely solvent, and fully able to meet any liability growing out of the bond sued on; that the plaintiff,

without the consent of the defendant, Downey, released the said Wilson and his estate from all obligation upon the bond sued upon, and thereby exonerated the defendant Downey. By supplemental answer the plaintiff in error, as administrator with the will annexed of the estate of John G. Downey, deceased, set forth the giving of notice to the creditors of the estate of Downey in accordance with the laws of the state of California, and the failure of the United States to comply with the statutes of that state regarding the presentation of claims against the deceased. Notice to the creditors of the estate of Downey was published March 20, 1894. No claim was ever presented by the defendant in error to the administrator or the administrator with the will annexed of that estate. The estate of B. D. Wilson was settled and distributed March 14, 1893. The only proof of any defalcation on the part of Hunter is found in a document from the treasury department of the United States, which was stipulated by the respective parties at the trial to be a correct transcript of the entries referred to, from which it appears that on September 8, 1859, the first auditor of the treasury certified that there was then a balance due from Hunter, as late marshal for the Southern district of California, to the United States, of $7,680.31, as appeared from the statement and vouchers which he therewith transmitted for the decision of the comptroller of the treasury thereon, and that on the 13th day of September, 1859, the comptroller admitted and certified that balance. The items of the account and vouchers, however, upon which these certificates were based, were introduced in evidence in connection with and as a part of them; and from them it appears that for no part of Hunter's incumbency of the office of marshal do they purport to be a full statement of the items of his account, and do not purport to cover a single item of his account as such officer subsequent to the December, 1856, term of the court, whereas he continued to be marshal until the 4th of August, 1858,—nearly two years longer. Moreover, it appears from the fragmentary and incomplete accounts appearing in the certified transcript that many of the items for which the marshal claimed credit were not actually rejected by the treasury officials, but merely suspended. The first two of these suspended items aggregate $3,112.95. They are:

Vou. No. 1. Amt. paid Ira Gilchrist for repairs of court room, susp's for want of authority from the sec. of the interior.............. $ 500 00
Vou. No. 4. Amt. paid Sanford & Carson for books, stationery, and furniture. There is no authority for the purchase of the furniture from the interior department. Before an allowance can be made for books and stationery, the items must be specifically detailed. Suspended ....................................................... 2,612 95

There are other suspended items of considerable amounts, to wit, one of $150, another of $112, another of $233.40, and various others of smaller amounts. Whether these suspended items were allowed during the remainder of Hunter's term of office, extending nearly two years, in no way appears from the record. The certified transcript introduced in evidence does not pretend to embrace any of his accounts for that period of time. On such a fragmentary and incomplete statement of accounts, for only a portion of the term of office

of the principal obligor, for whose faithful performance of duties the sureties obligated themselves, judgment was entered in the court below in favor of the plaintiff and against the surviving surety for $7,680.31, with interest thereon at the rate of 6 per cent. per annum from December 4, 1865, on the sum of $7,614.02, making the total amount of the judgment $27,155.70, with legal interest thereon from the date of judgment, and with costs of suit.

No one denies that the transcript from the books and proceedings of the treasury department is competent evidence. The statute makes it evidence; that is to say, prima facie evidence. Rev. St. § 866; Bruce v. U. S., 17 How. 437, 439; Smith v. U. S., 5 Pet. 300; U. S. v. Pinson, 102 U. S. 548; Moses v. U. S., 166 U. S. 597, 17 Sup. Ct. 682. But the transcript from the books and proceedings of the treasury department so made evidence is, as declared by Chief Justice Taney in Bruce v. U. S., supra, "a copy of the entire account as it stands on the books (which must include debits as well as credits)." In U. S. v. Gaussen, 19 Wall. 198, 211, the court, in speaking of a similar provision of the act of March 3, 1797 (1 Stat. 512), said:

"A transcript or a transcribing is substantially a copy. A copy from the books, and not of the books, shall be admissible in evidence. An extract from the books, a portion of the books, when authenticated to be a copy, may be given in evidence. While a garbled statement is not evidence, or a mutilated statement, wherein the debits shall be presented and the credits suppressed, or perhaps a statement of results only, it still seems to be clear that it is not necessary that every account with an individual, and all of every account, shall be transcribed, as a condition of the admissibility of any one account. The statement presented should be complete in itself, perfect for what it purports to represent, and give both sides of the account as the same stands upon the books."

In the case from which this quotation is taken the accounts were returned and certified quarterly, and were eight in number. The objection having been made in that case that they were fragmentary and incomplete, the court declared that the objection was not sustained by the facts. "As presented in the record," said the court, "each report is complete and perfect in itself. Each report contains all upon the subject during the time that it purports to represent. In the aggregate, they cover the whole period of Barrett's service." 19 Wall. 212. In U. S. v. Jones, 8 Pet. 375, 383, the court said:

"The act of congress, in making a transcript from the books and proceedings of the treasury evidence, does not mean the statement of an account in gross, but a statement of the items, both of the debits and credits, as they were acted upon by the accounting officers of the department."

To the same effect are the cases of U. S. v. Edwards, 25 Fed. Cas. 977, and U. S. v. Patterson, 27 Fed. Cas. 462, 463.

A judgment based upon fragmentary and incomplete accounts of a portion only of the official term of an officer does not, we think, find any support in anything decided in either of the cases of U. S. v. Pinson, 102 U. S. 554; U. S. v. Gaussen, 19 Wall. 211; U. S. v. Stone, 106 U. S. 530, 1 Sup. Ct. 287; U. S. v. Hunt, 105 U. S. 187; U. S. v. Dumas, 149 U. S. 285, 13 Sup. Ct. 872; Soule v. U. S., 100 U. S. 11; Smith v. U. S., 5 Pet. 292; or U. S. v. Smith (C. C.) 35 Fed. 490. The transcript from the books and proceedings of the treasury

department upon which the judgment appealed from is based, contains not one single item of account subsequent to the December, 1856, term of the court of which the principal obligator was marshal, —not a single item of the accounts of the marshal for the nearly 2 years that he remained in office thereafter. The period covered by the accounts contained in the transcript from the books and proceedings of the treasury department in evidence expired more than 33 years before the present action was commenced. It is entirely true that the statute of limitations does not run against the government; but certainly the government cannot, any more than an individual, recover from the sureties in a bond, without proving the breach thereof by the principal obligor. In this case the United States has recovered judgment against the estate of one of the sureties in the bond sued upon, for large sums of money, in respect to which the evidence does not show that the principal obligor was in default. Nearly one-half of the amount claimed on the part of the government to be due from Hunter was, as shown by the transcript of the treasury department introduced in evidence, paid out by the marshal for repairs to, and for furniture, stationary, and books for, the court room. Whether or not he ever furnished the treasury officials the authority for the making of those expenditures does not appear; nor does it anywhere appear in what way those suspended items, if finally rejected, or any of the balances shown by the accounts that were introduced in evidence, were affected by the accounts of the marshal for that portion of his term of office extending from the close of the December, 1856, term of the court, to August 4, 1858, when his term of office expired. The proper presumption to be drawn from the government's delay of more than 33 years, during which long period the marshal and one of his bondsmen died, and the other bondsman, for aught that appears, remained in ignorance of any demand against the principal obligor, we are not called upon to decide. In the case of Dox v. Postmaster General, 1 Pet. 317, 326, which was an action upon a postmaster's bond executed on January 1, 1816, and conditioned for the faithful performance of his duties, a suit for the breach of which was instituted July 1, 1821, one of the questions certified to the supreme court was whether the bond could, upon the facts of the case, be considered, in judgment of law, as paid and satisfied, or otherwise discharged. In disposing of that question, the court, speaking through Chief Justice Marshall, said:

"If this question was founded on the time which was permitted to elapse before the institution of the suit, the answer must be in the negative. The bond was executed on the 1st day of January, 1816; the postmaster was removed from office on the 1st day of July in the same year; and this suit was instituted in August, 1821. But little more than five years intervened between the time when the sum due from the principal in the bond was ascertained, and the institution of the suit. The presumption of payment has never been supposed to arise from length of time, in such a case, even between individuals; much less in the case of the United States, where all payments are placed on that record which must be kept by the officers of government."

The court found an additional reason against the presumption in the case cited, growing out of the fact that the pleas in the case did not allege payment, but presupposed that payment had been

made. The court said, however, that "length of time is evidence to be laid before the jury on the plea of payment."

Whether the long period of more than 33 years that intervened between the action of the treasury officials in the case at bar and the institution of the present suit would be sufficient to sustain a plea of payment, we are not called upon to decide, because there was no such plea in the court below, and, of course, no finding upon any such issue. In the court below, and here, the defense of the action, apart from the alleged lack of evidence of the alleged indebtedness, has been rested chiefly upon the failure of the government to present its claim to the administrator of the estate of Downey for allowance, and upon the act of congress of August 8, 1888 (25 Stat. 387). That act is entitled "An act requiring notice of deficiency in accounts of principals to be given to sureties upon bonds of United States officials, and fixing a limitation of time within which suit shall be brought against said sureties upon said bonds," the first section of which declares:

"That hereafter, whenever any deficiency shall be discovered in the accounts of any official of the United States, or of any officer disbursing or chargeable with public money, it shall be the duty of the accounting officers making such discovery to at once notify the head of the department having control over the affairs of said officer, of the nature and amount of said deficiency, and it shall be the immediate duty of said head of department to at once notify all obligors upon the bond or bonds of such official of the nature of such deficiency, and the amount thereof. Said notification shall be deemed sufficient if mailed at the post-office in the city of Washington, District of Columbia, addressed to said sureties respectively, and directed to the respective post-offices where said obligors may reside, if known: but a failure to give or mail such notice shall not discharge the surety or sureties upon such bond."

The second and last section of the act provides:

"That if, upon the statement of the account of any official of the United States, or of any officer disbursing or chargeable with public money, by the accounting officers of the treasury, it shall thereby appear that he is indebted to the United States, and suit therefor shall not be instituted within five years after such statement of said account, the sureties on his bond shall not be liable for such indebtedness."

This act clearly manifests the intention of congress that, upon the adjustment by the treasury officials of the accounts of the various officers, all indebtedness to the United States thereby shown shall, if not paid, be sued for by the government within a reasonable time; otherwise, the sureties upon such official bonds shall not be liable for such indebtedness. The act, however, shows upon its face that it applies to the future only. The improbability that congress, in prescribing the period of 5 years as a limitation to such suits, would, if its attention had been called to the matter, have excluded from its provisions indebtedness evidenced by accounts adjusted more than 30 years theretofore, does not justify the court in giving to the act a retrospective effect, when such intention cannot be derived from the act itself.

As, upon a new trial, which must be directed for the reason already given, the cause may be disposed of on other grounds, we need not now decide whether the presentation of the government's claim, in accordance with the law of the state of California, to the

administrator of the estate of Downey for allowance, was essential to its maintenance of the action. The judgment is reversed, and cause remanded to the court below for a new trial.

GILBERT, Circuit Judge (dissenting). The majority of the court have reached the conclusion that the trial court should have granted a nonsuit at the close of the plaintiff's evidence, upon the ground that the marshal's account was not complete, for the reason that it covered only a portion of his term of office. It is true that the transcript, upon its face, does not contain all of the accounts between the United States and the marshal during the whole of the marshal's term of office. It does contain, however, the matters in dispute which are the subject of the controversy. It contains, upon the one hand, all the items with which the marshal was charged, —the drafts whereby funds were sent him during his term. The evidence of these was properly authenticated. Accompanying them was "a copy of a transcript from the books and proceedings of the treasury department," dated July 5, 1892, and properly certified. It began with the certificate of the first auditor, as follows:

"No. 11,250.   Treasury Department.   First Auditor's Office.

"September 8, 1859.

"I hereby certify that I have examined and adjusted an account between the United States and Edward Hunter, late U. S. marshal for the Southern district of California, and find that he is chargeable as follows:

To balance due from him, per report No. 8,542................... 7,614 02
To commission heretofore allowed, nonchargeable to him under
the 1st section of the act 3d March, 1797, viz.:
Per report No. 6,600..................................... 55 03
 "      "      "  8,542 ..................................... 11 26
                                                          ——————
Dollars ............................................. 7,680 31

"I also find that the balance due from him to the United States is 7,680.31 dollars, as appears from the statement and vouchers herewith transmitted for the decision of the comptroller of the treasury thereon.   $7,680.31.

"T. L. Smith, First Auditor."

Then follows the certification of the comptroller that that balance is due, and a statement of the items with which the marshal is chargeable, arising from "suspensions and disallowances, per report No. 6,600, still outstanding and unaccounted for," the sum total of which is the amount which was found by the first auditor to be due the United States. It is true that the items so disallowed and suspended are not distributed through the whole term of the marshal's office. The last of them is of no later date than January, 1857, whereas his term of office expired on August 4, 1858. But the adjustment of the account was made, as we have seen, on September 8, 1859, and the only inference to be drawn from the fact that no disallowances or suspensions were made during the last 18 months is that the accounts of disbursements during that period were made according to law. The only items that are omitted from the transcript as it was presented to the court below are the items of the marshal's account of disbursements which were

found satisfactory and were allowed, and for which he has been given credit. I am unable to see how the absence of those items renders the account which was presented so fatally defective that a judgment of nonsuit should have been rendered upon its submission in evidence. What purpose would have been served by the presence of that portion of the marshal's account which was found satisfactory, and which was not objected to? In what way would the evidence of those items of his account have aided the court in arriving at a conclusion concerning the marshal's liability for the items which were disallowed and suspended? The controversy involved only the latter. No fault was found with the remainder of the accounts. The transcript from the books and proceedings of the treasury department contained all that was necessary to apprise the marshal or his bondsmen of the nature of the claim and demand of the United States. It contained the whole of the case of the government against the bondsmen. The fact that the marshal's account for the last year and a half of his term of office was approved and was satisfactory has no bearing upon the preceding items which were disallowed and suspended. The question which the treasury department had to determine was whether the marshal had properly accounted for all funds that had come into his hands. It was found that he had not. All the items of his default were clearly set forth in detail, accompanied with the reasons for which they were suspended and disallowed. The record shows that the plaintiff in error deemed the omitted portion of the account immaterial to his defense. He waived its absence. He interposed no objection to the transcript on the ground that it was incomplete, or that the items which had been duly credited to the marshal's account were omitted. His motion for a nonsuit was based on no such ground. Neither his assignments of error nor his brief in this court contains the remotest reference to it. The point is made for the first time in the opinion of the majority of this court, and the conclusion which has been reached can be based on no other theory than that the judgment was void for want of any evidence whatever to sustain it,—a position which I submit is unsustained by authority. The only defect in the transcript on which the plaintiff in error relied in the court below and in this court was that certain items of the differences were "suspended" only, and had not finally been passed upon by the department,—a position which, under the authority of Bruce v. U. S., 17 How. 437, and Smith v. U. S., 5 Pet. 295, was clearly untenable. After the account was adjusted, the burden was undoubtedly upon the marshal or his sureties to show that credit should have been given for the items which were suspended. So far as the evidence shows, they took no steps to do so. When the cause came on for trial the account stated constituted prima facie evidence of the amount which had not properly been accounted for, and with which the marshal was chargeable. Said the court in U. S. v. Hunt, 105 U. S. 187:

"The certificate has the legal effect of making the transcript prima facie evidence of the fact of indebtedness which it certifies, unless, upon the face of the account, it necessarily appears to be otherwise."

The plaintiff in error rested his case and went to trial upon the account as it stood and as it was stated, and offered no evidence to contradict. it. I think that, in the absence of other evidence, the circuit court did not err in denying the motion for nonsuit, and in rendering judgment for the United States upon the account as stated.