[No. 11989.    Department Two.    February 13, 1915.]

## A. C. Eighme, *Appellant,* v. P. P. Holcomb *et al., Respondents.*[1]

Sales—Contracts—Construction. Where a contract partly written on a printed form, for the sale of apples on consignment, provided in the printed part that the consignor agreed to pool his apples with other growers and sell for the pool price and that the factor "shall not sell any fruit for less than the minimum prices as hereinafter stated," leaving blank columns at the end of the printed form for the number of boxes, variety and minimum prices, which columns were not filled out, but the words were stricken and the space used for writing in an agreement whereby the consignee agreed to sell specified varieties for the pool prices of the factor, "with an advance on the following varieties," of certain specified sums, the written part fixing the agreement for advances cannot be construed as the "minimum price" mentioned in the printed form, since the latter words were evidently permitted to remain in the form by inadvertence and no minimum price was agreed to; the words "advance" and "minimum price" not being synonymous in any sense; and there being no provision of the contract expressly showing an intention to base the minimum price on the advances specified, there was no ambiguity in the contract.

Evidence—Parol Evidence—To Vary Writing. Parol evidence of experts to explain the terms of a contract is inadmissible when the contract is not ambiguous.

Contracts — Construction — Ambiguity. In a contract partly written on a printed form, more attention is paid to the written than to the printed part.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 1, 1913, upon the verdict of a jury rendered in favor of the defendants by direction of the court, in an action on contract. Affirmed.

*Reeves, Crollard & Reeves,* for appellant.

*Williams & Corbin,* for respondents.

Crow, J.—This action was commenced by A. C. Eighme against P. P. Holcomb and Caroline H. Holcomb, his wife, to recover $1,439, which plaintiff claimed to be due him for

[1]Reported in 146 Pac. 391.

apples sold to the defendants in pursuance of a written contract of which the following is a copy:

"This is to certify that I hereby give to the Wenatchee Fruit Company authority to sell for me all the fruit listed below.   Said option is given on the following conditions:

"First.—That my fruit shall be pooled and sold with fruit of various other growers, and I shall receive the same prices, according to grade and varieties of fruit, as other growers receive.

"Third.—That the said Fruit Company sell all fruit in any way it deems best to secure best prices obtainable, and shall not sell any fruit for less prices than the minimum prices as hereinafter stated by me under this agreement.

"Fourth.—If the price obtained for the fruit is greater than the minimum price set by me, I shall receive the price which the fruit sold for; the said fruit company shall receive for its services as a handling charge per box: Peaches and Cots, 2 cents; Pears, 5 cents; C grade apples, 5 cents; Extra Fancy and Fancy, 9 cents.

Estimated

| No.  Boxes. | Variety | Minimum |
|---|---|---|
| *Ex. Fancy* | *Fancy* | Price |
| *3½—4—4½* | *3½—4—4½* | *5 T & C* |

"*I hereby agree to sell to the Wenatchee Fruit Company the following varieties of apples, for the pool price of apples of said Fruit Company, with an advance on the following varieties: $1.10 on Jnos. and W. Saps; 90c on Staymen W. Saps; $1.10 on Ark. Blacks; $1.50 on Delicious; 75c on Lumber Twigs; 75c on C Grade; Fruit to be packed according to association rules.        A. C. Eighme,*

"Wenatchee Fruit Co.,

"By P. P. Holcomb."

It is admitted that the defendant P. P. Holcomb was doing business for the benefit of the community consisting of himself and wife, under the name of Wenatchee Fruit Company. The contract, which was drawn upon a printed form or blank used by defendants, was partly printed and partly written. Some three or four words were typewritten.   In order that the printed portion may be distinguished from that which was written or typewritten, we have italicized the latter.   Plain-

tiff alleged that, by the terms of this contract, the defendants agreed to purchase his 1912 apple crop, stipulating to pay such sums as might be received by the defendants therefor after deducting certain expenses and charges; but that defendants thereby agreed that the minimum prices plaintiff should receive were the prices stated in the written portion of the contract. In substance, he further alleged that, at such minimum prices, he had delivered apples to defendants of the value of $3,847, and that defendants had only paid him $2,408 thereon. Defendants admitted the execution of the contract; denied that they agreed to pay minimum prices as alleged by plaintiff, and, in substance, affirmatively alleged that, under the pool price for the varieties of fruit handled, plaintiff would be entitled to the sum of $2,101.69; that defendants had paid him $2,470.50; that plaintiff was indebted to defendants in the sum of $289.55 for commissions for selling the apples; that the total credits to which defendants were entitled would be $2,760, and that defendants had overpaid plaintiff in the sum of $658.96, for which latter sum the defendants asked judgment. At the close of all the evidence, the trial judge directed a verdict in defendants' favor for $658.96, and entered judgment for that amount. The plaintiff has appealed.

During the trial of the action, the following stipulation was, by agreement of parties, admitted in evidence:

"It is hereby stipulated and agreed by and between the plaintiff and defendant that the plaintiff delivered to the defendant 2,263 boxes of C grade apples of the varieties named in the contract in evidence in this suit, being plaintiff's exhibit '1,' and that the plaintiff delivered to the defendant 1,960 boxes of fancy and extra fancy apples of the varieties mentioned in said exhibit '1;' and that if the defendant is entitled to any commission on the said apples, he is entitled to the sum of five cents per box on all C grades and nine cents per box on fancy and extra fancy, and that the total amount of said commissions would be the sum of $289.55. It is further stipulated and agreed that the plaintiff has received from the defendant the sum of $2,470.50 on said apples. It is fur-

ther stipulated and agreed that under the pool price of said apples the plaintiff would be entitled to the sum of $2,101.09; that the amounts paid to the plaintiff by the defendant were in the following sums and on the following dates: October 3rd, check $375.00; October 15th, check $750.00; November 14th, $300.00; November 30th, $265.00; December 14th, $300.00; December 19th, $58.00; December 19th, on order given Lamb-Davis Lumber Co., $62.50. It is further stipulated that the last delivery of said apples, consisting of 220 boxes, was made on the 15th day of November, 1912, and that all of the apples save and except said 220 boxes had been delivered prior to that date. It is further stipulated into the record that all of the dates mentioned in that stipulation just read refer to the year 1912."

The principal question on this appeal is the proper construction of the contract. Appellant first moved for a judgment on the pleadings, on the theory that the written contract fixed minimum prices on the fruit delivered. This motion being denied, appellant on the trial proceeded upon the theory that the contract was ambiguous in its terms, and offered two witnesses as experts to explain its meaning. Upon objection, their evidence was excluded. Appellant and one other witness testified that, before entering into the contract, respondents assured appellant that there would be no "come back" from appellant to respondents. This was denied by respondents. The evident theory upon which the trial court excluded the evidence of the experts and upon which he entered judgment was that the evidence offered and the evidence admitted was incompetent, as it tended to vary the terms of a written contract; that the contract was not ambiguous; that it did not fix minimum prices; that it expressly stipulated a sale at pool prices; and that appellant was liable for overpayments made to him in the way of advancements, and was also liable for commissions. After a careful consideration of the written contract, we conclude that the trial judge reached the correct conclusion.

As above stated, the contract was partly written and partly printed, and an examination of the original instrument, which

is before us as an exhibit, convinces us that no minimum price was stipulated, as appellant now contends. While it is true that clause three of the printed portion of the contract provides that the respondent shall not sell any fruit for less prices than the minimum prices "hereinafter stated," and clause four provides that, if the price obtained shall exceed the minimum price, the appellant shall receive the selling price, an examination of the entire contract makes it apparent that no minimum prices were fixed. Clause one of the printed portion expressly provides that appellant shall receive the same prices—pool prices—as other growers received, and the written portion expressly provides that appellant agrees to sell for the pool prices. Unless the word "advances," used in the written portion of the contract, can be construed to mean "minimum," and thereby provide for minimum prices, there can be no possibility of sustaining appellant's contention. The two words do not have any similarity of meaning. It is apparent that the written portion fixed advances which respondent would make to appellant, but that it did not provide for minimum prices. The printed words "minimum price" appear near the close of the printed portion of the document, but the form itself shows that below these words were four blank columns headed by the words "Cots, Peaches, Pears, Apples," with the evident intention of inserting minimum prices when agreed upon. This was not done. The words "Cots, Peaches, Pears, Apples" are stricken, and beneath such stricken words the written portion of the contract is inserted.

It is evident the words "minimum price" were permitted to remain by inadvertence; that no minimum prices are named, and that, by the written portion of the contract, appellant expressly agreed to sell his apples at pool prices. It is elementary that, if a contract is partly printed and partly written, a blank form being used, more attention will be paid to the written than to the printed portion if any conflict exists, the written portion being language expressly selected by the

parties to express their intention. The printed words "minimum price," which as we conclude were inadvertently left in the written contract, stand alone without any minimum prices being named. They cannot be construed to mean the same as the written words "advance prices," selected and used by the parties.

Considering the entire contract, and the stipulation introduced in evidence, we conclude that the judgment must be sustained. It is so ordered.

MORRIS, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.