### LOMAX TRANSPORTATION CO. v. UNITED STATES.

No. 12422.

United States Court of Appeals
Ninth Circuit.

July 14, 1950.

Petition to Remand Denied Aug. 18, 1950.

---

Witherspoon, Witherspoon & Kelley and William V. Kelley, Spokane, Wash., for appellant.

Harvey Erickson, U. S. Atty., Frank R. Freeman, Asst., U. S. Atty., Spokane, Wash., for appellee.

Before MATHEWS, ORR and LINDLEY,* Circuit Judges.

LINDLEY, Circuit Judge.

Appellant, defendant below, on October 2, 1944, contracted to store certain United States naval supplies in its warehouse in Spokane, Washington. The agreement defining the rights and obligations of the parties consisted of a printed form contract of a type ordinarily used for procurement of supplies rather than for storage, in which were inserted special typewritten provisions, one of which read: "Contractor assumes absolute responsibility for property in his possession and shall maintain Bond and Insurance at his own expense in accordance with the State of Washington Warehousing Laws."

Though it is difficult to cull the exact facts from the record before us, we understand that the government, pursuant to the contract, delivered certain naval stores to appellant's warehouse, receiving therefor warehouse receipts which, in substance, purported to absolve appellant from loss of or damage to the goods through fire or other causes beyond its control.

* Judge of the Seventh Circuit, sitting with the Ninth Circuit by special designation.

On December 26, 1944, a fire in the warehouse resulted in the destruction of or damage to certain of the supplies then stored there. A Naval Board of Inquiry, convened shortly after the fire, found no evidence of negligence on appellant's part. Later, appellant was notified, however, after salvage operations by the Navy had been concluded, that the Navy claimed that appellant was liable for losses due to the fire in the amount of $12,359.13. The claim was subsequently increased to $16,415.87, referred to the General Accounting Office, and demand for payment made. Appellant denied liability and this action ensued, resulting in a judgment for the government in the district court.

This appeal rests upon appellant's contentions that it was not, under the terms of the contract, an insurer of the supplies stored with it and, further, that, even though appellant had, by contract, bound itself to an insurer's liability, the government has failed to prove by competent evidence the damages it claims to have sustained.

▉▉▉ Although appellant was, under the laws of the State of Washington, in the customary conduct of its business, subject only to the common law liability of a warehouseman as distinguished from the absolute liability of an insurer, and although there were in existence Naval Regulations to the effect that no insurance provisions other than those appearing in the prepared printed form contract should be included in *procurement* contracts (emphasis supplied), it seems quite clear that neither the laws of Washington nor the Regulations precluded appellant from contracting to assume the absolute liability of an insurer with respect to the supplies stored with it by the Navy. This, it seems equally clear, is precisely what was effected by the insertion of the typewritten Special Provision 4A in the contract. That that provision may be inconsistent with the terms of the printed Article 10 and those of the printed warehouse receipts does not, as appellant suggests, militate against its binding legal effect, for it is well settled that, where a special clause has been written into a prepared printed form contract, it will prevail over any inconsistent provisions contained in the

printed portion. Williston on Contracts, Sec. 622; Eighme v. Holcomb, 84 Wash. 145, 146 P. 391. Here, then, appellant's assumption of absolute liability for the goods stored with it was neither qualified nor nullified by the provisions of printed Article 10 or those of the printed warehouse receipts issued by it.

▉▉▉ Though it follows that appellant was, under its contract, absolutely liable for any loss or damage to the supplies stored with it, it was, of course, incumbent upon the government to prove, by competent evidence, the amount of the damages sustained; and neither the "Disputes" Article of the contract nor the fact that appellant failed to apply to the Navy for administrative relief from that contract can have the effect of relieving the government of the burden of proving its case. Yet the only evidence introduced in support of the claim for unliquidated damages was a "Certificate of Settlement" of the General Accounting Office, which states, in effect, that the Comptroller has examined and settled the claims of the United States against appellant and that there is a balance due the government of $16,415.87. The certificate contains no statement as to source of information as to the claims which it purports to settle. It reads: "I certify that I have examined and settled the claims of the United States against the person named for value of government-owned property damaged by fire and expenses of salvage operations while in the possession of the debtor for storage under contract * * * and find the sum of $16,415.87 is due the United States from the debtor * * *." It bears the printed signature of the Comptroller-General, under which appear the partially illegible written words "by A. J. Towhermper" or some such name. Who this gentleman may have been, whether he was authorized to sign certificates for the Comptroller-General and, if so, in what capacity, the record does not disclose. Assuming, however, arguendo, that the certificate was properly authenticated, at its most it is evidence only that the United States was asserting a claim against appellant; a mere statement of account made by a stranger to the transactions between the Navy and ap-

pellant,—a third person who, if he had any knowledge at all, knew only from hearsay. Appellant had denied liability; yet the trial court rendered judgment against it for damages upon a certificate which merely certified that the Navy was claiming for damage to goods $16,000. No witness who had knowledge of the goods, of their value or of the amount of damage done to them was produced. It is inconceivable that the provisions of Sections 1732 and 1733, Title 28 United States Code Annotated, although they do, of course, render admissible, when duly authenticated, the records and claims, or transcripts thereof, of which a certificate is the culmination could have the effect of converting the mere ex parte statement of claim itself into evidence of the extent to which the naval supplies stored in appellant's warehouse had been damaged by fire. A judgment is not justified by a certificate that a claim is being made. See United States v. Morris, 102 U.S. 548, 26 L.Ed. 226; United States v. Jones, 8 Pet. 375, 33 U.S. 375, 8 L.Ed. 979; Harvey v. United States, 9 Cir., 97 F. 452; United States v. Patterson, 27 Fed.Cas. p. 462, No. 16,008; United States v. Smith, C.C., 35 F. 490.

Inasmuch as the government failed to prove any damage, the judgment must be and is reversed.