B. K. PERKINS v. CLARA A. DUNLAVY ET AL.

(Case No. 1800.)

1. JUDGMENT NUNC PRO TUNC.— Though the court may erroneously hold that a defendant is not in court in such manner as to authorize a judgment by default, such error cannot be revised at a subsequent term of the court upon a motion to enter a different judgment *nunc pro tunc.*

2. SAME.— A judicial error in entering up an order at a former term, which was not sanctioned by law, or the failure to enter up one which should have been rendered but for the incorrect ruling of the court upon points made before it, cannot be remedied by a judgment to the contrary entered *nunc pro tunc.*

3. SAME.— A court having once held that a citation to a defendant was invalid; that no appearance had taken place, and that a judgment by default could

not be rendered, has no authority, at a subsequent term, to reverse its decision, overrule the motion to quash, pronounce judgment by default and execute a writ of inquiry.

4. SAME.— For such errors the defeated party has his remedy by appeal after final judgment. But if the suit was for damages for a tort, he cannot, by reviving an abated action (after the death of the defendant) against the administrator, have the issue tried as to whether he was entitled to a judgment against the deceased in his life-time, and thus cause the administrator to defend against a claim for damages, the right to recover which ceased with the original defendant's death.

5. SAME.— In every case, to entitle an applicant to have his judgment entered *nunc pro tunc*, on account of the death of one of the parties, the action must, at the time of the death, have been ready for the rendition of the final judgment. Such is not the case when a trial has still to take place.

APPEAL from Fort Bend. Tried below before the Hon. Wm. H. Burkhart.

Suit for a tort filed on the 13th day of February, 1882, by appellant against J. F. Dyer (the original defendant), seeking to recover actual and exemplary damages alleged to have been sustained by him by reason of an indictment which was presented against Perkins in the district court of Fort Bend county charging him with having swindled Dyer, it being alleged that the presentment of the indictment was procured by Dyer, and that the prosecution was instigated, encouraged and carried on by him; that he acted with malice toward Perkins, and without probable cause.

Citation issued to Bexar county, March 31, 1882, and was served on Dyer April 22, 1882.

At the first term after service, Dyer, as his first step in the case, filed (on the 24th of April, 1882) before return day his motion to quash the citation for two reasons, one of which, and the one relied on, was that it did not state the nature of the plaintiff's demand, which motion was sustained on the 28th of April, 1882, default day, and the citation was quashed; the case was continued for the term, and was adjudged an appearance case to the next term of the court, and plaintiff Perkins duly excepted to this ruling. At the same term of the court, on the 25th day of April, 1882, the clerk in his handwriting entered on the motion docket, at the verbal request of one of defendant's attorneys, a rule for security for costs, and on the same day the rule was sustained, and plaintiff's (Perkins') attorneys being present, accepted notice of the rule, and the bond for costs was filed April 28, 1882, on default day.

This entry by the clerk, on the motion docket, plaintiff Perkins contended, was an appearance by defendant, and that by this act of defendant's attorneys he had entered an appearance in the case,

and thereby waived any defect there may have been in the citation; the court held that it did not constitute an appearance.

At the same term, on the 28th of April, 1882, plaintiff filed a motion to enter judgment by default against defendant because he had not filed an answer in the cause. This motion to enter judgment by default was not ruled on by the court until after the motion to quash the citation had been sustained and the continuance entered.

Defendant Dyer filed his answer to the merits on the 12th day of May, 1882, before the adjournment of the April term, 1882.

At the next term of the court an order for *scire facias* to make Mrs. S. C. Dyer, the executrix, and the heirs of Dyer parties defendant was made, Dyer having died July 2, 1882. Mrs. Dyer, the executrix, was never served and made a party, and she died also. The present defendants, as the heirs and legatees of J. F. Dyer, were made defendants, and they answered to the merits and pleaded in abatement of the action, that it was one to recover damages for malicious prosecution, and being for a tort was a personal action, and died with the defendant J. F. Dyer, and could not be maintained or further prosecuted after his death against his legal representatives. At the same term, plaintiff filed a motion to enter judgment by default *nunc pro tunc* as of the 28th of April, 1882, against Dyer, with writ of inquiry to be executed againt present defendants, which motion was based on two grounds:

1. That the citation served on Dyer in Bexar county, and which the court quashed, was sufficient to compel Dyer to plead at the appearance term, or suffer the consequences of a judgment by default.

2. That if the said citation was defective and insufficient, that defendant had voluntarily entered his appearance in the case by causing the entry of the rule for costs. Which motion the court overruled and plaintiff excepted.

At the same term, the plea in abatement by the appellees, heirs and legatees of the original defendant, J. F. Dyer, was sustained, and the cause dismissed at plaintiff's costs, and he excepted.

*Geo. W. & F. K. Duff*, for appellants, cited: Arts. 1251, 1281, 1282, 1285 and 1286, R. S.; Zipp v. Kerr, Law Review, September 11, 1883; Ricks v. Pinson, 21 Tex., 507; Ward v. Ringo, 2 Tex., 420; Johnson v. Smith, 14 Tex., 412; Holman v. Chevaillier, 14 Tex., 340; O'Connell v. State, 18 Tex., 343; Mitchell v. Overman, 103 U. S., 62.

*Pearson & McCamly*, for appellees, cited: R. S., art. 1248; Watson *v.* Loop, 12 Tex., 14; Taney *v.* Edwards, 27 Tex., 224; Gibbs *v.* Belcher, 30 Tex., 79; Harrison *v.* Moseley, 31 Tex., 608; Ferrill's Adm'r *v.* Mooney's Executors, 33 Tex., 219; Galveston City R'y Co. *v.* Nolan, 53 Tex., 139; Broom's Legal Maxims, p. 904 *et seq.;* Chitty's Pleadings, 1st vol., star p. 68; Kent's Commentaries, p. 416, 1st vol. and note C.; Blackstone's Com., 2d vol., 3d book, art. 302; Williams on Executors, 1st vol., star p. 560; id., 2d vol., star pp. 1229, 1230 and 1231; Iredell on Executors, pp. 453, 592; Morris *v.* Carson, 7 Cowen, 281; Hayden *v.* Vreeland, 18 Am. Rep., 723; Grubbs, Adm'r, *v.* Sult, 34 Am. Rep., 765.

WILLIE, CHIEF JUSTICE.— It is unnecessary for us in the present case to decide as to the validity of the citation served upon Dyer, or as to whether or not the filing of a motion for security for costs, or of a notice and interrogatories to take the depositions of a witness, amount to such an appearance by a defendant as will authorize a judgment by default.

The application for judgment *nunc pro tunc* was based upon the ground that the district judge erred in quashing the citation, and holding the defendant was not in court in such manner that a judgment by default could not be taken against him. Admitting for the purposes of this appeal that the judge did err in such ruling, it was an error or incorrect action in a matter of law which cannot be revised or reversed at a subsequent term upon a motion to enter a different judgment *nunc pro tunc.*

It is well settled that judicial errors in entering up an order at a former term which was not sanctioned by law, or the failure to enter one which should have been rendered but for an incorrect ruling of the court upon points made before it, cannot be remedied by a judgment to the contrary ordered *nunc pro tunc.* Lorance *v.* Marchbanks, 2 Law Review, 44; Freeman on Judgments, §§ 68, 70; Chambers *v.* Hodges, 3 Tex., 517.

The court could not render a judgment by default against Dyer whilst the motion to quash was pending and urged by his counsel, unless it held that an appearance was effected by some action on the part of the defendant.

Having once held that the citation was invalid, and that no appearance had taken place, and that a judgment by default could not be rendered, it had no authority at a subsequent term to reverse its decision, overrule the motion to quash, pronounce a judgment by default, and execute a writ of inquiry.

For errors committed in such matters the defeated party has his remedy by appeal to this court after final judgment, and if, by the death of a defendant in an action dying with him, a plaintiff is deprived of such remedy, it is but one of the risks attending such suits. He certainly cannot, by reviving the abated action against adminstrators, have the issue tried as to whether or not he was entitled to a judgment against the deceased in his life-time, and thus cause them to defend against a claim of damages for a tort, the right to which ceased with his death.

This is sufficient to dispose of the appeal. It may be added, however, that if the judgment by default had been granted, and the defendant had died thereafter and before writ of inquiry was executed, it is, to say the least, doubtful as to the power of the court to execute the writ. It is not like the case of a death occurring between verdict and judgment. A verdict fully determines the rights of the parties to the suit, and a judgment in accordance with it follows as a matter of course. But a judgment by default when writ of inquiry is awarded leaves the amount of damages undetermined. The execution of this writ is not in all respects an *ex parte* proceeding. The defendant may appear and by evidence reduce the amount of damages claimed by the plaintiff; he may raise objections to plaintiff's right to recover the full amount of his claim, and take exceptions to the decision of the judge. Sayles' Prac., § 627.

The death of the defendant between the date of the default and the execution of the writ leaves the cause in a partially finished condition. An interlocutory judgment has been entered up, and a final judgment is held in abeyance, not by the laches of the court or its officers, but by permission of the statute itself.

In this respect the case differs from that of Mitchell v. Overman, 103 U. S., 62. There the judgment was *pro confesso*, and the delay in entering the decree arose from the tardiness of the judge in making up his conclusions. Besides, after order taking a bill as confessed, the proceedings are strictly *ex parte*, and the defendant cannot be heard except at the demand of his adversary.

Mr. Freeman, in his work on Judgments, says, § 68: "In every case, to entitle the applicant to have his judgment entered *nunc pro tunc* on account of the death of one of the parties, the action must, at the time of such death, have been ready for the rendition of the final judgment." In this case it would not have been ready, because a trial had still to take place in which the defendant could in some measure participate, and partially, at least, control the demand of the plaintiff. The same writer also says: "It is not sufficient that

an interlocutory judgment had· been ·pronounced and proceedings were pending in pursuance of a writ of inquiry." Id., § 59.

To fix the liability of a defendant in an action which does not survive, so that it may be enforced after death against his administrators, the claim should have ripened into a final judgment for a certain ascertained amount, and not be in such a condition that he may appear and partially defeat the demand. Resisting a judgment for the amount of damages claimed is a part of the defense to all such suits, and this can take place upon a writ of inquiry.

·The administrators cannot be compelled to defend against an action for a tort committed by the deceased, and a right of action for which died with him; yet appellant would have forced them so to do, if his motion had been granted.

The court did not err in refusing the motion, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered February 29, 1884.]