JOHN POWER, as Executor, Respondent, *v.* JOHN SPECKMAN, Impleaded, etc., Appellant.

All final decrees of a surrogate against an administrator, which adjudge money of the estate in his hands due and payable to parties entitled, run against him personally and *de bonis propriis*, and may be docketed and become a general lien enforceable by execution.

In case of such a decree all that is necessary in order to hold the sureties upon the administrator's bond is that the proceeding should show that the judgment was rendered for an official default.

Where the papers upon which the decree was rendered are imperfect or ambiguous, the facts may be examined sufficiently to determine whether the decree was purely personal or one touching the administration.

In an action against defendant as surety upon the bond of B., as administratrix of O., it appeared that O. was supposed to have died intestate. B., the only next of kin, having renounced administration, the public administrator was appointed and letters duly issued to him. He entered upon his duties; about $500 came to his hands, which he received from B. as being the whole estate. B. thereafter, upon a petition duly verified, which alleged that the estate amounted to $2,800 and set up all the necessary jurisdictional facts, was appointed administratrix and the bond in suit executed. The public administrator thereupon filed a petition which alleged his own appointment and authority and the possession by B. of $2,800 belonging to the intestate as described in her petition; a citation was issued, upon return of which the surrogate ordered B. to pay over said sum to the public administrator. Before such order took effect a will of O. was discovered and proved and letters issued to plaintiff, and thereby the former letters were revoked. (Code Civ. Pro. § 2684.) Plaintiff procured a decree directing B. to pay over to him said sum of $2,800 which she failed to do. Defendant's answer admitted that B., as administratrix, received certain moneys of the estate. Neither the petition of the public administrator nor the decrees of the surrogate indicate how or in what character B. held the money. *Held,* that the appointment of B. as administratrix was not void because of the previous appointment of the public administrator, that fact simply made it erroneous or irregular and liable to be reversed on appeal or vacated on a proper application; that the order, in the absence of proof of fraud or collusion, could not be questioned collaterally (Code Civ. Pro. § 2473), and the sureties upon B.'s bond were liable for her proper performance of duty as long as her letters remained unrevoked; that even if B. took the money of the estate as an individual, as soon as letters were issued to her she held it as administratrix (Code Civ. Pro. § 2596) and as she became liable to deliver said money to the executor

upon his appointment and the revocation of her letters, the surrogate's decree directing payment to said executor bound B. and her sureties. (Code Civ. Pro. § 2605.)

(Argued April 22, 1891; decided May 5, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 8, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

This action was upon a bond alleged to have been given by defendant Gertrude Burmester, as administratrix of the estate of "Burnhardine, known as 'Dina' Overbeck, deceased."

The facts, so far as material, are stated in the opinion.

*Robert P. Getty* for appellant. The letters of administration granted to the public administrator were in all respects valid. (2 R. S. 74, § 27; Laws of 1863, chap. 362, § 3; Laws of 1867, chap. 782, § 6; Code Civ. Pro. §§ 2590, 2660.) The public administrator had sole and exclusive authority over the decedent's property during all times that his letters were in force. (Code Civ. Pro. § 2592.) The letters of the public administrator were in force at the time of the alleged grant to Gertrude Burmester. The letters to the public administrator were, as a matter of law, in full force and effect. (Code Civ. Pro. §§ 2487, 2568, 2684; Laws of 1882, chap. 410, § 236; Laws of 1871, chap. 335; Laws of 1877, chap. 154; Laws of 1882, chap. 124.) The letters of the public administrator being in force at the time of the granting of the alleged letters to Gertrude Burmester, the latter were null and void. (Code Civ. Pro. §§ 2472, 2592; Laws of 1863, chap. 372, § 3; Laws of 1867, chap. 782, § 6; 2 R. S. 76, § 34; *Roderigas* v. *E. R. S. Inst.*, 63 N. Y. 464; 2 R. S. 81, § 60.) Gertrude Burmester not being administratrix, there was no default in the condition of the bond. (*N. M. B. Assn.* v. *Conkling*, 90 N. Y. 116; *Ward* v. *Stahl*, 81 id. 406.) The surrogate not having jurisdiction to appoint Gertrude Burmester administratrix, the bond

was without consideration and, therefore, void. (Code Civ.
Pro. § 2667.) The fact that the defendant Speckman signed
this alleged bond did not make his act in so doing an *estoppel
in pais.* (Bigelow on Est. [5th ed.] 570; Bispham on Eq.
348.) No action will lie against the sureties upon an adminis-
trator's bond until proceedings for an accounting have been
had against the administrator and his default established
therein. (*Perkins* v. *Stimmel*, 114 N. Y. 359; *Haight* v.
*Brisbin*, 100 id. 219; *Hood* v. *Hood*, 85 id. 561.)

*Lewis J. Conlan* for respondent. The defendants Speck-
man and Touwsma, are liable for the amount of their princi-
pal's defalcation. (*Scofield* v. *Churchill*, 72 N. Y. 565; *Kelly*
v. *West*, 80 id. 139; *Harrison* v. *Clark*, 87 id. 572; *Kimbel*
v. *Newell*, 7 Hill, 116; 35 Penn. St. 148–150.)

FINCH, J. One of the sureties of the administratrix, who
has been sued for her default, seeks to reverse the recovery
against him upon two grounds. He claims that her appoint-
ment was void, and that she has not been required to account.
The case shows that Mrs. Overbeck was supposed to have
died intestate, and that her sister, Mrs. Burmester, was the
only next of kin entitled to administration; that she renounced,
and the public administrator was appointed, and letters duly
issued to him. He seems to have entered upon his duties, and
out of a small fund which came to him, amounting to less
than five hundred dollars, to have paid the funeral expenses.
Nevertheless, about a year later, Mrs. Burmester presented a
petition to the same surrogate for her own appointment as
administratrix. It was duly verified and established all the
jurisdictional facts necessary to validate the order which he
made appointing her administratrix. The Code provides, after
declaring the general jurisdiction of the Surrogate's Court,
that where its decree is drawn in question collaterally, and the
necessary parties were duly cited or appeared, the jurisdiction
is presumptively and, in the absence of fraud or collusion, con-
clusively established by the allegation of jurisdictional facts

contained in the petition. (§ 2473.) That document showed that there was no person, prior entitled, to be cited, and the order, therefore, in the absence of any proof of fraud or collusion, could not be questioned collaterally. We have upheld such an order where the person alleged to have died intestate was in fact living (*Roderigas* v. *East River Savings Institution*, 63 N. Y. 460; *O'Connor* v. *Huggins*, 113 id. 512); where there had been no citation to the widow, or renunciation by her (*Kelly* v. *West*, 80 N. Y. 139); and have asserted its conclusive character where the cause of action arose under the statutes of another state. (*Leonard* v. *Columbia Steam Navigation Co.*, 84 N. Y. 48.) The order of the surrogate appointing Mrs. Burmester was thus not void or without jurisdiction because of the previous appointment of the public administrator. That fact simply made it erroneous or irregular, and liable to be reversed on appeal or vacated on a proper application. Even in the latter case, if Mrs. Burmester could furnish some lawful reason, within the requirements of the Code, for the revocation of the prior letters, they might have been revoked and her own authority permitted to stand. It was upon that appointment of Mrs. Burmester that the bond of the defendants was executed, and since the appointment was not void the sureties became liable for her proper performance of duty so long as it remained unrevoked. She could not deny the character she had voluntarily acquired, however it might be with others.

But in her petition, Mrs. Burmester described the property of the intestate as amounting to twenty-eight hundred dollars, which was a very much larger sum than had gone into the hands of the public administrator, who had received it from her as being the whole estate, and his suspicions were thereby aroused. He filed a petition with the surrogate in which he alleged his own appointment and authority and the possession by Mrs. Burmester of the twenty-eight hundred dollars belonging to the intestate which she had described in her petition, and asked for a citation requiring her to show cause why she should not pay it over to him. He did not call her adminis-

tratrix, for in setting up his own prior right he could not be expected to recognize hers. But when she appeared before the surrogate, in answer to the citation, the question presented was which had the prior right. Both held letters, and Mrs. Burmester, holding as she did the money of the estate, held it as administratrix, and would so have continued to hold it, lawfully and properly, but for the assertion of the prior right. The surrogate decided in favor of the public administrator, and adjudged and ordered that she should pay the money over to him.

Then, and before any enforcement of the order, the affair took a new shape. A last will and testament of Mrs. Overbeck was discovered and admitted to probate, and letters testamentary issued to the present plaintiff. In such a case the Code provides (§ 2684) that the decree granting probate shall revoke the former letters. The decree itself is not in the record, and we must assume obeyed the law and revoked the letters to the public administrator and to Mrs. Burmester, and each became at once liable to account to the executor for the funds of the estate. The Code further provides (§ 2596) that a person to whom letters are issued is liable for money in his hands or under his control when his letters were issued, in whatever capacity it was received. So that, even if Mrs. Burmester took the money as an individual, the moment letters were issued to her she held the fund as administratrix. And the answer of Speckman admits that as administratrix she received into her possession certain funds and property of the estate.

The executor after his appointment obtained a decree from the surrogate that said Gertrude Burmester be and she hereby is directed to pay to the said John Power, executor, the said sum of two thousand eight hundred dollars. By section 2605 of the Code the successor of an administrator whose letters have been revoked may compel the latter to " deliver over money or other property," and is further authorized with the assent of the surrogate to prosecute the official bond.

It follows that since the appointment of Mrs. Burmester was

not void but good until vacated or set aside, and however she originally received the money she held it as administratrix the moment her letters were issued; and since she became liable to deliver the money to the executor upon his appointment and the revocation of her own letters, the decree of the surrogate was within his jurisdiction, and bound her as well as her sureties. (*Scofield* v. *Churchill*, 72 N. Y. 565.)

It is quite true that there are proceedings in aid of an executor or administrator which enable him by process of the surrogate and through his decree to recover from an individual money or property of the estate (Code, §§ 2706–2710); and that the petition of the public administrator, as also that of the executor and the two decrees of the surrogate contain nothing on their face to indicate how or in what charater the party proceeded against held the money, and so it is possible to argue that the decrees were against Mrs. Burmester only as an individual and not as administratrix, which result would discharge the sureties; but the facts established dissolve the ambiguity and show the true character of the decree. Had the proceeding against her been distinctively as an individual it could not have been maintained, for the recital in the petition of the public administrator of her petition for letters shows that the fact of her appointment appearing on the surrogate's own records was drawn to his attention, and would have been a complete defense and required a dismissal of the proceeding. As we have seen, it stands admitted by the answer that she held the property of the estate as administratrix and that possession was lawful and could not be interfered with until some paramount right was shown; and that was established, first, by the prior right of the public administrator, and, second, by the superior right of the executor. And so, while it is difficult to understand how all the complications arose, or to approve the ambiguous form of the papers, yet we are not required to misinterpret them and quite enough appears to show that Mrs. Burmester was liable as administratrix, and that the decree against her was for the non-performance of official duty. All final decrees against an administrator which adjudge money of the estate

in his hands due and payable to parties entitled, run against him personally and *de bonis propriis*, for they may be docketed and become a general lien and be enforced by execution which ranges over all his property. They do not adjudge that he pay as administrator, but that he pay; and always in the case of such a decree the liability of the sureties requires that the substance of the proceeding shall show that the judgment was rendered for an official default. Ordinarily that may be ascertained by reference to the petition and the form of the account, but where they are imperfect or ambiguous the facts may be examined sufficiently to determine whether the decree was one purely personal or one touching the administration of the estate. That the decree in this case was of the latter character is further indicated by the fact that no question about it except that of fraud was raised by the answer and no objection to the decree was made when put in evidence, and there was no motion for a nonsuit founded on its insufficiency as against the sureties. If such objections had been taken evidence as to the hearing before the surrogate might have been offered and the matter in some way relieved from any doubt and ambiguity. (*Smith* v. *Smith*, 79 N. Y. 634.) The sureties evidently did not misinterpret the decree at the trial and we ought not to do so now.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.