**HANNON et al. v. HENSON.** (No. 3492.)

Court of Civil Appeals of Texas. Texarkana. March 6, 1928.

Rehearing Denied May 31, 1928.

1. **Evidence ⟊⟊383(3)—Entry on judge's probate docket of permanent appointment of guardian is sufficient record evidence to establish that order was made at term when entry was made.**

Entry upon judge's probate docket of permanent appointment of guardian is competent and sufficient record evidence to establish fact that such order was made and declared by probate court at term when entry was made.

2. **Judgment ⟊⟊496—Service will be presumed when record of probate court showing adjudication is silent.**

When records of court of general jurisdiction, as probate court, showing adjudication in common proceedings comes in question collaterally, service will be presumed when record is silent.

3. **Judgment ⟊⟊415—Judgment declared in record is not conclusive and may be impeached in direct attack for illegality.**

Judgment declared in record of court of general jurisdiction is not conclusive and may be impeached by proper pleading in direct attack for illegality.

4. **Judgment ⟊⟊273(2)—Generally, where court rendered formal judgment not entered, it has inherent power to order judgment entered nunc pro tunc upon production of evidence to establish fact of judgment.**

Generally, in any case where court did actually render formal judgment but same has not been spread at large upon minutes of court in consequence of neglect or accident, court has inherent power to order that judgment once pronounced be entered nunc pro tunc on proper evidence to establish fact of judgment and to show its terms, character, and relief granted.

On Rehearing.

5. **Judgment ⟊⟊273(8)—In purely nunc pro tunc proceeding, court is limited to determination of whether judgment made at former term was omitted from minute record and whether adequate note was made of judgment.**

In purely nunc pro tunc proceeding, authority of court is limited to inquiry of two things, namely, whether an order or judgment actually made at former term was omitted to be spread at large in proper legal minute record of court, and whether or not there was adequate note or memorandum made of such order or judgment.

6. **Judgment ⟊⟊273(1)—Object of nunc pro tunc entry is to have judgment properly exhibited of record in order to constitute legal evidence thereof.**

Object and purpose of entering judgment nunc pro tunc is simply to have such judgment properly exhibited of record in order to constitute legal evidence thereof.

7. **Judgment ⟊⟊273(8)—Court entering judgment or order nunc pro tunc does not have authority to set it aside or to prevent enforcement although it is wrong as matter of law.**

In proceedings to have judgment entered nunc pro tunc, authority of court does not exist to set aside, vacate, and prevent enforcement of former order or judgment, although fault in order or judgment is that it is wrong as matter of law.

On Motion for Rehearing.

8. **Courts ⟊⟊116(1)—Court has inherent power independent of statute to correct own records so as to make them disclose what has been adjudicated.**

Courts have inherent power to correct own records at any time so as to make them legally disclose what has been adjudicated and that power exists independently of any statutes and may be exercised by court on its own motion as well as at instance of interested party.

9. **Courts ⟊⟊116(1)—Court has continuing duty to correct record as essential to complete administration of justice.**

To have record corrected when essential to complete administration of justice of case is continuing duty resting upon court, not mere private right of action which may be lost by lapse of time.

10. **Courts ⟊⟊30, 116(1)—Court may lose jurisdiction of case, but not over its records.**

Court may lose jurisdiction of case to which record relates, but it never loses jurisdiction over its records.

11. **Judgment ⟊⟊273(1)—Power of court to enter judgment nunc pro tunc can be exercised only in cases where cause was "ripe for judgment."**

Power of court to enter judgment nunc pro tunc can be exercised only in cases where cause was "ripe for judgment"—that is, where nothing remains to be done by court that rendered judgment to authorize clerk to record it in minutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ripe for Judgment.]

12. **Guardian and ward ⟊⟊13(7)—Notation, that order making permanent appointment of guardian had been rendered, made in probate docket by presiding judge, held sufficient evidence such order had been made.**

Where order making permanent appointment of guardian had been rendered, notation to that effect made by presiding judge on probate docket *held* sufficient evidence that order of appointment had been made.

13. **Guardian and ward ⟊⟊13(7)—In proceeding for entry nunc pro tunc of order appointing guardian, court may only order clerk to record in minutes what court has done.**

In purely nunc pro tunc proceeding to have order appointing guardian entered in minutes of probate court, court has no power to do more than order clerk to properly record in minutes what court has done, since court is then considering record alone, not any question or issues involved in proceedings to be recorded.

⟊⟊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**14. Judgment ⚖️273(8)—In purely nunc pro tunc proceeding, court may not inquire into that which had to be decided before valid order could be made.**

In purely nunc pro tunc proceeding, court having no jurisdiction of original case has no authority to inquire into or decide that which had to be decided before valid order could be made.

**15. Judgment ⚖️470—Presumption in favor of validity of judgment arises from fact that judgment was rendered and legal evidence of its rendition preserved.**

Presumption in favor of validity of the judgment arises from fact that judgment was rendered and legal evidence of its rendition has been preserved.

**16. Judgment ⚖️287—Clerical act of entering judgment on minutes gives it no additional immunity from attack made in proper manner and time.**

Mere clerical act of entering judgment upon minutes gives it no additional immunity from attack made in proper manner and at proper time.

**17. Guardian and ward ⚖️13(7)—In proceeding for nunc pro tunc entry of order appointing permanent guardian, court must presume that court making order appointing guardian correctly decided that notice was given (Rev. St. 1925, art. 4137).**

In nunc pro tunc proceeding to have order appointing permanent guardian entered in record of probate court, since in proceedings for appointment of permanent guardian court has no power to appoint until legal notice has been given in compliance with Rev. St. 1925, art. 4137, it was duty of court in original proceedings to ascertain whether notice had been given before making order and whether or not that was done was question of fact which court was called upon to decide; hence in this proceeding court must presume that question of notice was correctly decided.

**18. Guardian and ward ⚖️13(7)—In proceeding for nunc pro tunc entry of order of appointment, record can only be corrected by evidence furnished by record.**

In nunc pro tunc proceeding for entry of order appointing guardian, duty of inquiring into validity of order is no more imperative when correction is sought by interested party than it is when court is acting on own motion, and in either proceeding record can only be corrected by evidence furnished by record.

**19. Guardian and ward ⚖️13(7)—Order appointing permanent guardian held not invalid because notice of appointment was not recorded in probate minutes (Rev. St. 1925, arts. 4106, 4137).**

In nunc pro tunc proceeding for entry of order appointing permanent guardian, where notice of appointment was not recorded in probate minutes as required by Rev. St. 1925, arts. 4106 and 4137, held that failure to make entry after order was made did not impeach validity of that which court had jurisdiction to do, since power to make order depended upon fact that

legal notice had been given, not upon its record in court minutes.

**20. Evidence ⚖️386(2)—In nunc pro tunc proceeding for entry of order appointing permanent guardian, extraneous evidence that legal notice was given held inadmissible where notation was made on probate judge's docket (Rev. St. 1925, art. 4137).**

In nunc pro tunc proceeding for entry of order appointing permanent guardian, extraneous evidence that legal notice of appointment required by Rev. St. 1925, art. 4137, was not made held inadmissible, where notation of the order was made on probate judge's docket, from which conclusive presumption arises order was made after proper notice, since when law conclusively presumes fact extraneous evidence to contrary is inadmissible and if admitted cannot be considered.

**21. Guardian and ward ⚖️13(7)—Conclusiveness of presumption of notice of appointment of guardian obtaining in nunc pro tunc proceeding does not obtain in direct attack (Rev. St. 1925, art. 4137).**

While in nunc pro tunc proceeding for entry of order appointing permanent guardian legal notice of appointment required by Rev. St. 1925, art. 4137, will be conclusively presumed from notation of probate judge on judge's probate docket, it does not obtain in proceedings when order is directly attacked in answer upon ground that no legal notice had been given.

**22. Guardian and ward ⚖️13(7)—Legality of notice of appointment of guardian may not be raised to prevent entry of order nunc pro tunc, but must be raised by action for purpose of annulling order (Rev. St. 1925, art. 4137).**

In nunc pro tunc proceeding for entry of order appointing permanent guardian, where appointment was sought to be attacked on ground that legal notice was not given as required by Rev. St. 1925, art. 4137, held that such issue could not be raised collaterally merely for purpose of preventing perfection of record, but in order to reopen question there must be pleadings by proper parties against necessary parties affirmatively impeaching original order for purpose of annulling same.

**23. Guardian and ward ⚖️13(7)—In proceeding for entry nunc pro tunc of order appointing guardian, pleading directly attacking order is distinct action, and sufficiency is determined by requirements in independent suit.**

In nunc pro tunc proceeding for entry of order appointing permanent guardian, pleading sufficient to constitute direct attack upon order when presented in form of answer is nevertheless distinct action, and its sufficiency as cause of action is determined by what would be required of pleader instituting independent suit for purpose of annulling order.

**24. Guardian and ward ⚖️13(7)—Plea in proceedings for nunc pro tunc entry of order appointing guardian, which affirmatively set up failure to give notice of appointment, held not direct attack on order (Rev. St. 1925, arts. 4106, 4137).**

In nunc pro tunc proceeding for entry of order appointing permanent guardian, where

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sureties of guardian set up affirmative plea that legal notice of appointment required by Rev. St. 1925, art. 4137, was not shown of record as required by article 4106, and hence court did not have jurisdiction, *held* such plea was insufficient to constitute direct attack upon order.

**25. Guardian and ward** ⬤⟲13(7)—**In proceeding for entry nunc pro tunc of order appointing guardian, order could not be annulled where parties affected were not before court (Rev. St. 1925, art. 4137).**

In nunc pro tunc proceeding for entry of order appointing permanent guardian, where sureties of guardian in answer affirmatively set up failure to give legal notice of appointment required by Rev. St. 1925, art. 4137, but all parties who would be affected were not before court, *held* that order could not be annulled.

**26. Motions** ⬤⟲59(3)—**Failure to have necessary parties before court in proceeding to annul order is fundamental and may be noticed at any stage of case.**

Failure to have necessary parties before court in proceeding to annul an order affecting them is fundamental defect which may be noticed at any stage of the case.

**27. Guardian and ward** ⬤⟲7—**Guardian is, when sued for default, estopped to question regularity of his appointment.**

One who has qualified and acted as guardian is, when sued as such for default, estopped to question regularity of his appointment.

**28. Guardian and ward** ⬤⟲18—**Guardian and sureties on his bond held estopped to annul appointment to escape liability for guardian's official misconduct (Rev. St. 1925, art. 4137).**

In nunc pro tunc proceeding for entry of order appointing permanent guardian, where guardian and sureties sought to annul order for failure to give legal notice of appointment required by Rev. St. 1925, art. 4137, in order to escape liability for injuries from guardian's official misconduct, *held* that both guardian and sureties on bond were estopped to annul order of appointment.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Application by A. Henson, as guardian in probate court, to have a probate order entered nunc pro tunc. The application was denied and appeal taken to the district court. From an order of the district court granting the application, V. T. Hannon and others appeal. Affirmed, without prejudice to an independent action by appellants to vacate the judgment.

The appeal is from an order of the district court granting the application of appellee guardian to have a probate order entered nunc pro tunc. The probate court denied the application for such order. There was appeal by the guardian to the district court. It appears that on October 2, 1922, D. L. Henson, on his own application and without citation, was appointed temporary guardian of the estate of two minor children, both at the time under 14 years of age. The order was duly entered in the probate minutes. The guardian duly qualified as such, gave the required bond, and had made and returned an inventory and appraisement of the estate. The oath and bond were duly recorded in the probate minutes. On January 17, 1923, being the next succeeding term of the court, the notation was made by the probate judge on the judge's probate docket, namely:

"January 17, 1923. Temporary guardianship made permanent, and O. M. Frier, W. W. Durham and R. T. Howell appointed appraisers. Bond fixed in double amount of appraised value of personal property."

This order was not entered in the probate minutes during that term of court or since. Whether or not citation required by article 4137, R. S., was issued and returned rests entirely upon extrinsic parol evidence. No citation and return were ever recorded in the probate minutes, and no official record thereof in any form appears to have been made. The files of the clerk of the court do not reflect issuance and return of any citation. The trial court made the finding, upon the parol evidence before him, namely:

"I find that at the time the probate judge made said order on January 17, 1923, making the temporary guardianship permanent, there was evidence before the said court that citation and notice required under the statute had been fully complied with and that due return had been made thereon. I find that said citation has been lost and that the same has not been recorded in the probate minutes of said court."

This finding is challenged by the appellants. The oral evidence was to the effect that a citation was sent by the guardian's attorney to be published in the "Progressive Advertiser," a newspaper, a copy of the publication, or clipping from the newspaper, being offered in evidence. Such clipping purported to be an official citation, in accordance with the terms of the statute, addressed to the sheriff, and having the signature of the clerk of the court affixed thereto. The following evidence is the entire evidence concerning the return of the notice. The publisher of the newspaper testified:

"After the citation had been published for the length of time required by law I made an affidavit of this fact, attached a copy of the publication and the affidavit to the original citation, and either returned it to the attorney for the guardian or to the court. I cannot say whether I returned it to the clerk or to the attorney."

There is no intimation whatever in the evidence that the sheriff ever received it or made return of the citation, or that it ever reached the clerk's office. It was shown only

that in the county clerk's office there "was made diligent search for the original citation, and we could not find it." The probate judge testified:

"It was my custom to always call for the citation and return of the officer, but I cannot say that I had this citation and return before me at the time of entering the order, or that I know service was had. I either had it before me or was assured by the attorneys that the notice or citation had been properly served and that they had it and would see that it was filed in court."

It further appears that after the notation on the probate docket of January 17, 1923, D. L. Henson qualified as permanent guardian and took charge of the estate and administered the same until the July term of court, 1926, when he was removed and the appellee was appointed and qualified as permanent guardian.

On April 18, 1927, the appellee filed in the probate court the present application, setting up that the order of January 17, 1923, was entered on the judge's probate docket, but that "there is no order appearing in the probate minutes showing that said guardianship was made permanent," and prayed that such order be entered nunc pro tunc "upon the probate minutes at said time of January 17, 1923, as the order of the probate court making said guardianship permanent." The appellants, who were cited apparently as sureties, made answer to the application. They affirmatively pleaded, in contest of the legality of judgment nunc pro tunc, that the court was without jurisdiction to enter such character of order "because there is no notice or citation recorded in the minutes of the court as required by the statute showing that service had been completed; because there is no record showing that the probate judge did make an order or authorize the minutes to show that the guardianship was made permanent." The prayer of appellants was:

"That an order of this court be entered declaring that all proceedings, named herein are * * * without warrant of law and therefore null and void; for this and other relief the defendants will ever pray."

The findings made by the court are substantially stated above. Such findings fully appear in the record and need not be here copied.

Sid Crumpton, of Texarkana, for appellants.

Elmer L. Lincoln, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). [1-3] It may not be questioned that the entry upon the judge's probate docket of the permanent appointment of the guardian was competent and sufficient record evidence to establish the fact that such order was made and declared by the probate court at the term when it was made. West v. Keeton, 17 Tex. Civ. App. 139, 42 S. W. 1034, and other cases. The case of Threatt v. Johnson, 156 S. W. 1137, decided by this court, is not contrary to the above cases. In this Threatt Case no order making the guardianship permanent was entered on the judge's docket or in the minutes or otherwise in any record or memorandum form. But duly important and necessitating comment in the present case is the further established fact that the probate records are entirely silent as to issuance and return of citation evidencing jurisdiction of the probate court to make the order offered in evidence. The judge's order does not recite or refer to citation in the proceeding. There was no citation and return of record, or in the clerk's files, or in any official memorandum form in the probate rolls. It is the well-established rule that when the records of a court of general jurisdiction, as the jurisdiction of the probate court is considered in this state, showing an adjudication in a common proceeding, comes in question collaterally, service will be presumed when the record is silent. Guilford v. Love, 49 Tex. 715, and other cases. This means that the party introducing the record need not produce the process nor the return, as the presumption is that they are regular and rightful. Yet, as is also the established rule, as to the question of jurisdiction, the judgment declared is not conclusive and can be impeached by proper pleading, in direct attack of illegality. The appellants specially set up the affirmative plea that there is no such matter of record existing, and tendered issue in that form, as to jurisdiction of the court to enter the order at all. Such plea is permissible pleading, and can be made available in a proceeding nunc pro tunc. Defects of jurisdiction appearing in the face of the record may be taken advantage of on its production under such plea attacking the record. The plea is in purpose and effect a direct attack upon the jurisdiction of the court, in impeachment of the record, by affirmative averment showing its absence of record.

[4] The conceded general rule is that in any case where the court did actually render a formal judgment, but the same has not been spread at large upon the minutes of the court, in consequence of neglect or of any accident, the court has the inherent power to order that the judgment once pronounced be entered nunc pro tunc, upon the production of proper evidence to establish the fact of the judgment and to show its terms and character and the relief granted. We doubt such practice must be taken with the restriction, as held, that such entry nunc pro tunc is not proper unless at the date to which the judgment is to relate back a

final judgment could then legally have been entered immediately, as within the jurisdiction of the court to do, and that an order entered up at a former term not sanctioned by law cannot be entered nunc pro tunc. Wheeler v. Duke, 29 Tex. Civ. App. 20, 67 S. W. 909. The rule is to the contrary of that practice. So trying the issue raised under the pleading by an inspection of the rolls of the probate court it is apparent from the face thereof that the appellants' allegations are sustained that evidence in any form of the issuance and actual return of citation did not appear on the record or in the files of the probate court. The power of the probate court to appoint a permanent guardian is statutory, and the citation and return prescribed by statute is jurisdictional to the exercise of that authority. Articles 4123, 4137, R. S. The statute expressly requires the citation and return to be placed of record at large in the probate minutes. Article 4106, R. S. The intendment of this provision of the law is to prescribe what shall be deemed enduring conclusive evidence that such acts have been done. The appellee undertook to meet the plea and proof of appellants in the above respect by recourse to extrinsic evidence. The intendment was to show that proper service was made and that such citation and return did actually appear of record or in the clerk's files at the time the judge made the order, but has since been lost and cannot be produced in the present trial. The evidence offered was substantially as herein stated. The publisher of the newspaper testified that he received from the hands of the attorney for the guardian a citation under the signature of the county clerk; that he was acquainted with the signature of the county clerk; that he published the same the required time; that he made affidavit of the fact of publication and attached it together with a clipping of the publication to the original citation. The publisher of the paper was unable to say to whom he delivered the published notice and original. As he says:

"I attached a copy of the publication and affidavit to the original citation, and either returned it to the court or the attorney for the guardian. * * * I cannot say whether I returned it to the clerk or the attorney for the guardian."

The letter of the attorney for the guardian, offered in evidence, addressed to the publisher of the newspaper, reads:

"Inclosed find citation on appointment of temporary guardianship, which please publish for the length of time required by law and return to me with copy of publication attached together with your fee."

The probate judge himself was unable to say "that I had citation and return before me at the time of entering the order, or that I know service was had." He could

7 S.W.(2d)—39½

only say that it was his "custom to always call for the citation and return of the officer." Based upon that custom entirely, the judge says:

"I either had it before me or was assured by the attorneys that notice or citation had been properly served and that they would see that it was filed in court."

The newspaper clipping in the possession of the attorney, but not the same one claimed to be attached to the original citation by the publisher, was offered in evidence. It appeared in proper form, addressed to the sheriff, and commanding him to cause it to be published in a newspaper of general circulation. The return day of the citation appeared to be January 15, 1923, the first day of a regular term of the probate court. The clerk of the court does not testify that he issued the citation, and neither does he or any deputy testify that the citation after publication was returned into his custody or files. The sheriff or any deputy does not testify that citation was ever received or return was ever made of it. The evidence is entirely silent as to the fact that the citation, if issued, was returned at any time into the court or placed in the files of the clerk. The testimony offered respecting the citation and return was not, quoting from Camoron v. Thurmond, 56 Tex. at page 29, "as full and ample and with all the sanction necessary to establish any other fact."

The question, in view of appellants' plea, is precisely that of whether the citation and return did actually appear of record, or its equivalent, in the files of the clerk at the time of the order of the probate judge. Unless the citation was actually returned at the time, then the proceeding would stand as one with citation and return, the essential jurisdictional fact, wanting, rendering the probate order made premature and void. Assume that it was shown in the proof that a citation issued and was published the required time, yet this was only an intermediate proceeding between the commencement of the guardianship application and the order of the probate judge. Proof was as much needed of the actual return of the publication, in order to confer complete jurisdiction, as proof of the actual issuance and publication of the citation. It is required in order to make completed service of process, as evidencing a jurisdictional fact, to have actual official return as well as issuance and publication. The statute expressly requires the officer executing process to make due return of its execution. Article 2043. The return is a necessary part of the probate records or rolls, because it constitutes a part of the official proof of service. The court can only look to that source of proof in entertaining jurisdiction to render final judgment. Absence of return would operate to halt the entering of final judgment for lack of legal

proof of service. In the absence, as here, of any circumstances reasonably indicating, directly or inferentially, that citation and return was actually received by the sheriff and placed among the clerk's files, it could not reasonably be concluded that it had been lost since that date. Presumption could not be indulged that it had been returned and lost, in view of the evidence directly disclosing the want of citation and return of record or in the clerk's files. Such facts prima facie appearing, it could no longer be presumed that the facts were otherwise. Direct evidence became necessary to show the facts were otherwise. Therefore there was not production of citation and return in answer to appellants' plea, operating to confer authority upon the court to vacate the judgment.

The judgment is reversed, and judgment is here entered denying the application for judgment nunc pro tunc, and vacating the judgment. All costs to be taxed against appellee.

### On Rehearing.

Upon a reconsideration of the record and upon our own motion we have reached the conclusion that we were in error in treating the plea of appellants as in effect a sufficient cross-complaint of direct attack upon the judgment in question to set aside and vacate it. It is believed that all the necessary parties are not before the court in order to make such character of distinct proceeding available, and therefore the trial court did not err in treating the pleading purely as an answer to the simple nunc pro tunc proceeding.

The appellants' plea specially set up that they were sureties on the bond of the first guardian, and that such guardian sold real estate as permanent guardian under the judgment involved in the present proceeding. Since the purchaser of the land holds his interest therein directly under the alleged judgment, he, at least, would be a necessary party to a complaint seeking to vacate and set aside such judgment and to prevent enforcement of it. All persons having connection with and that would be affected in interest by the vacation of the judgment are necessary parties and should be made parties to such direct proceeding or action. In that conclusion the question on appeal becomes one simply of whether or not there was adequate note or memorandum made of the order or judgment for which a nunc pro tunc order is sought. We think so, as held in the original opinion. That being established, there was nothing further to be determined, in view of the absence of a cross-complaint or independent action directly attacking the order or judgment under proper pleadings with all necessary parties joining therein or defendants thereto.

[5-7] In a purely nunc pro tunc proceeding the authority of the court is limited to the inquiry of the two things, namely: (1) Of whether an order or judgment actually made at a former term was omitted to be spread at large in the proper legal minute record of the court; and (2) of whether or not there was adequate note or memorandum made of such order or judgment. The object and purpose of such practice is simply to have such order or judgment properly exhibited of record in order to constitute legal evidence thereof. Such nunc pro tunc order only directs the ministerial act of writing the order or judgment at large upon the official book. In such proceeding, as intimated in our original opinion, the authority of the court does not exist to set aside and vacate and to prevent the enforcement of the former order or judgment, although the fault in the order or judgment is that it is wrong as a matter of law. 1 Black on Judgments, § 132; 12 A. & E. Ency. Law, p. 84; 23 Cyc. pp. 843, 844; 34 C. J. p. 77; Perkins v. Dunlavy, 61 Tex. 241. Mistakes merely may be corrected. Article 2229, R. S. The nunc pro tunc proceeding distinctly as such cannot be employed to change the former order or judgment actually rendered to one which the court neither rendered nor should have rendered. In order to empower the court which rendered the order or judgment to vacate and to prevent enforcement thereof, as being rendered at a former term improvidently or without proper service or return of citation, it must be done either by way of cross-action in the nunc pro tunc proceeding, or by independent action, setting up directly the invalid proceeding relied upon. The whole proceeding them becomes one really to vacate a former judgment; and all persons affected must be present therein.

Accordingly the former order of reversal is set aside and the judgment of the trial court is affirmed, without prejudice to an independent action by appellants to vacate the judgment.

### On Motion for Rehearing.

HODGES, J. The original opinion in this case and that on the first motion for rehearing were written by Justice LEVY and concurred in by all the members of this court. In response to a motion by the appellants we have given the case further consideration. On account of the absence of Justice LEVY the writer will state the conclusions finally reached and in which Justice LEVY concurs. The material facts and issues have been previously stated and will not be here repeated.

[8-11] This proceeding is merely one to perfect a judicial record, to have entered upon the probate minutes an order made at a former term and which was inadvertently, or otherwise, omitted. It is well settled that courts have the inherent power to correct their own records at any time so as to make them legally disclose what has been adjudicated. That power exists independently of any statute, and may be exercised by the

court on its own motion, as well as at the instance of an interested party. To have a record corrected when essential to the complete administration of justice in a case is a continuing duty resting upon the court, not a mere private right of action which may be lost by lapse of time. The court may lose jurisdiction of the case to which the record relates, but it never loses jurisdiction over its records. Coleman v. Zapp, 105 Tex. 491, 151 S. W. 1040. The only questions necessarily involved in such proceedings are, was a judgment rendered, and, if so, is there record evidence of that fact? 34 Corpus Juris, p. 72, thus states the rule:

"The power to enter a judgment nunc pro tunc can be exercised only in cases where the cause was ripe for judgment; that is, where the case was in such a condition at the date to which the judgment is to relate back that a final judgment could have been then entered immediately."

See, also, Perkins v. Dunlavy, 61 Tex. 241.

[12-16] It may be said that a case is "ripe for judgment," as stated above, when nothing remains to be done by the court that rendered the judgment to authorize the clerk to record it in the minutes. In this case the order making permanent the appointment of D. L. Henson as guardian had been rendered, and a notation to that effect had been made by the presiding judge on the probate docket. That was sufficient evidence that such an order had been made. West v. Keeton, 17 Tex. Civ. App. 139, 42 S. W. 1034. The duties of the judge of the court then ended, and all that remained was the clerical work of properly recording in the minutes what the court had done. It was the failure of the clerk to perform that duty that has made these proceedings necessary. The court is now called upon to order done what the clerk should then have done without any further order. In a purely nunc pro tunc proceeding the court has no power to do more than that. He is then considering the record alone—not any question, or issue, involved in the proceedings to be recorded. Having no jurisdiction of the original case, he has no authority to inquire into, or decide, that which had to be decided before a valid order could be made. The presumption in favor of the validity of a judgment arises from the fact that the judgment was rendered, and legal evidence of its rendition has been preserved. The mere clerical act of entering the judgment upon the minutes gives it no additional immunity from an attack made in the proper manner and at the proper time.

[17, 18] In proceedings for the appointment of a permanent guardian the court has no power to appoint until legal notice has been given. In this instance it was the duty of the court in the original proceedings to ascertain if notice had been given before making the order. Whether or not that had been done was a question of fact which the court was then called upon to decide. In this proceeding we must presume that he decided it correctly. Bouldin v. Miller, 87 Tex. 359, 28 S. W. 940. The duty of inquiring into the validity of such an order is no more imperative when the correction is sought by an interested party than it is when the court is acting upon his own motion. In either proceeding the record can only be corrected by the evidence furnished by the record.

[19] It is true that the notice was not recorded in the probate minutes, as the statute requires. But the failure of the clerk to make that entry after the order was made did not impeach the validity of that which the court had jurisdiction to do. The power to make the order depended upon the fact that the legal notice had been given, not upon its record in the court minutes.

[20-24] It appears from the statement of facts brought to this court that the applicant for the correction undertook to prove by extraneous evidence that legal notice had been given. Appellants here contend that the evidence then adduced showed conclusively that no notice had been given. Undoubtedly that contention would be entitled to serious consideration if in this proceeding the fact of notice could be inquired into. But that cannot be done. The only question before the court was, Is there legal evidence that the final order had been made? When that evidence was found the presumption in favor of the power of the court to make the order became conclusive. When the law conclusively presumes a fact extraneous evidence to the contrary is not admissible, and if admitted it cannot be considered. However, what has been here said as to the conclusiveness of the presumption in favor of notice does not obtain in proceedings when the judgment or order is directly attacked in the answer upon the ground that no legal notice had been given. But in order to reopen that question there must be pleadings by the proper parties, and against necessary parties, affirmatively impeaching the original order upon that ground and for the purpose of having the unrecorded order annulled. That issue cannot be raised collaterally merely for the purpose of preventing the perfection of the record. A pleading sufficient to constitute a direct attack upon an order or judgment, when presented in the form of an answer, is nevertheless a distinct action, and its sufficiency as a cause of action is determined by what would be required of the pleader in an independent suit instituted for the purpose of annulling the judgment. In the original disposition of this appeal the answer of the appellants was treated as meeting those requirements. Upon further consideration of the case we have receded from that conclusion.

[25, 26] But even if the answer contained all the requisites essential to constitute a di-

rect attack upon the order under consideration, all the parties who would be affected by the cancellation of that order are not before the court. It appears from the pleadings that appellants are sureties on a bond executed by D. L. Henson, as the former guardian, to enable him to sell real estate belonging to his wards; that the real estate was sold by Henson, and a suit on that bond, filed by the present guardian, is now pending in the district court of Bowie county. Evidently some person bought the land sold by the guardian, and that party would naturally be interested in the preservation of the record through which his title must be deraigned, and should be made a party to any suit having for its object the annulment of the order appointing D. L. Henson guardian. No such party is now before the court. The failure to have the necessary parties before the court in such a proceeding is a fundamental defect which may be noticed at any stage of the case. Dallas County Levee Improvement District v. Ayers (Tex. Civ. App.) 246 S. W. 1112; King v. Commissioners' Court, 10 Tex. Civ. App. 114, 30 S. W. 257. Other authorities might be cited to the same effect, but it is unnecessary.

[27, 28] There is another fact which may be considered in the disposition of this appeal. Appellants allege that this proceeding to correct the record was instituted by the present guardian in order that such record when perfected may be used in the prosecution of the suit against D. L. Henson and his sureties now pending in the district court. The logical inference is that the sole purpose of the appellants in resisting the perfection of the record is to defeat, if possible, the effort in behalf of the minors to collect what is due their estate from a defaulting guardian. It is well settled that one who has qualified and acted as guardian is, when sued as such for a default, estopped to question the regularity of his appointment. Portis v. Cummings, 21 Tex. 266. For the same reason he should not be permitted to maintain a suit to annul the order of his appointment when prosecuted for the sole purpose of escaping liability for injuries from his official misconduct. We are of the opinion that his sureties are in no better position. The bond executed by them was based upon the assumption that he had been legally appointed, if it did not recite that fact. By signing the bond the sureties guaranteed the fidelity of their principal, and thus enabled him to sell his ward's property and gain possession of proceeds which he has not accounted for. We think they are no less subject to the same estoppel. Plowman v. Henderson, Adm'r, 59 Ala. 559; Nash v. Sawyer, 114 Iowa, 742, 87 N. W. 707; Power v. Speckman, 126 N. Y. 354, 27 N. E. 474; Hoffman v. Fleming, 66 Ohio St. 143, 64 N. E. 63; Bruce et al. v. United States, 17

How. 437, 15 L. Ed. 129; 24 Corpus Juris 1059.

For the reasons stated, we conclude that the pleadings of the appellants should be construed as only a collateral attack on the probate order originally made, and that the validity of that order is not an issue.

The motion will be overruled.