## (July 6, 1966)

MORRIS FARBER, as Administrator of the Estate of ANN SMOLACK, Deceased, et al., Appellants, v. ROBERT SMOLACK, Respondent.

BENJAMIN, J. (dissenting). In April 1960, Arthur Smolack set out on a round trip from New York to Miami Beach, Florida, with his wife and two children in a 1959 Triumph station wagon. The station wagon was owned by his brother, the defendant, who lent it to him because Arthur at that time owned a 1952 Ford. Prior to turning the station wagon over to his brother, the defendant had twice had the clutch adjusted. In the week Arthur had possession of the vehicle before leaving for Florida, he again had the clutch adjusted. During the trip to Florida the clutch was still slipping and, therefore, Arthur had a new clutch installed there.

As had been his custom for the preceding 12 years, the defendant flew to Florida during the period that Arthur was there. The defendant's trip to Florida was for the dual purpose of visiting his parents during the Passover Season and servicing two of his accounts. In Florida the defendant twice used the station wagon to visit his business clients and used it on other occasions for personal trips. Before leaving Florida the defendant directed Arthur to drive the vehicle back to New York.

On the second day of the return trip the vehicle lost compression and was pulling to the right. Arthur had the exhaust manifold replaced and then drove for another hour and a half to Weldon, North Carolina, where he and his family spent the night. During that drive the station wagon was still pulling to the right but the condition was not again repaired. At 5 o'clock the next morning, the Smolacks continued on their homeward bound trip in wet and overcast weather on a two-lane highway. The station wagon continued to pull to the right and ultimately went into a skid and for a time veered over into the left-hand lane. When Arthur brought the car under control, he continued to proceed at a speed of from 35 to 40 miles per hour. The vehicle then went into another skid and into a ravine, throwing the decedent and one of her children out of the car.

The learned Trial Judge dismissed the complaint at the close of the plaintiffs' case holding that the controlling law in this case was the New York common law and that under the common law the loan of the station wagon amounted to a gratuitous bailment. In such a situation no liability is imposed for damages resulting from the negligent acts of the driver.

The parties are agreed that the substantive issue of the liability ensuing from the passenger-owner relationship is one to be determined in accordance with the law of the jurisdiction which has the greatest concern with that issue and that, as to this issue, the New York law should apply. (See *Babcock* v. *Jackson*, 12 N Y 2d 473, 481; *Dym* v. *Gordon*, 16 N Y 2d 120, 125.) In this regard they are correct since the dominant contacts with the occurrence are in the State of New York. It was merely fortuitous that the vehicle was passing through North Carolina at the time the accident occurred.

The issue, however, is whether the provisions of former section 59 of the Vehicle and Traffic Law, which would render the defendant owner liable for the negligence of the driver, may be applied to an occurrence without the State. This statute was derived from former section 282-e of the Highway Law (L. 1924, ch. 534) and was subsequently amended (L. 1958, ch. 577) to change its coverage from motor vehicles or motor cycles " operated upon a public highway" to vehicles " used or operated in this state." The statute had previously been held to have no extraterritorial effect (*Cherwein* v. *Geiter*, 272 N. Y. 165, 169; *Miranda* v. *Lo Curto*, 249 N. Y. 191, 192). It would appear that the basis for these holdings was the traditional choice-of-law rule that the law of the place of the tort governed the substantive rights and liabilities arising out of a tortious occurrence (see, e.g., *Selles* v. *Smith*, 4 N Y 2d 412, 414; *Gavin* v. *Malherbe*, 146 Misc. 51, affd. 240 App. Div. 779, affd. 264 N. Y. 403). The purpose of the 1958 amendment was to broaden the effective scope of the statute so as to extend recovery to those cases in which the accident occurred on private property (1958 Report of N. Y. Law Rev. Comm., pp. 612–614).

The Court of Appeals has held that " the rights and liabilities of the parties which stem from their guest-host relationship should remain constant and not vary and shift as the automobile proceeds from place to place " (*Babcock* v. *Jackson, supra*, p. 483) and that the law of New York should be applied where that is where the parties lived, their relationship arose, and the trip began

and was to end. It would be anachronistic indeed to then hold that the applicable New York law was its common law, which was thereafter negated by statute to conform to the exigencies of a modern mobile society. The relationship, when it was originally formed in New York, rendered the owner liable to the passengers for injuries sustained as a result of the negligent operation of the vehicle by the driver. It is that relationship which, when formed, should remain constant as the automobile proceeds from place to place. As the amendment of the application of the statute to vehicles used or operated in this State was intended to expand rather than to limit the scope of its coverage consonant with the then applicable limitations upon the right of the state to impose its own law in situations involving foreign occurrences, it follows that the alteration of the choice-of-laws rule would at the same time mandate the application of our existing statutory law rather than the application of common-law rules. If the law of New York is to be applied because of the State's greater interest in the relationship of the parties *inter sese*, we cannot apply a common-law rule which was negated by statute over 40 years ago. It would then be possible to have an accident occur in another jurisdiction which imposes a vicarious liability upon the owner, apply the law of New York which imposes a similar liability upon the owner and conclude that the owner incurs no liability. The phrase "in this state" cannot therefore be interpreted to mean "exclusively in this state" so as to negate the statutorily imposed liability where the trip began and was to end in this state and where the dominant contacts were with this state. "Where a particular application of a statute in accordance with its apparent intention will occasion great inconvenience or produce inequality or injustice, another and more reasonable interpretation is to be sought" (*Matter of Meyer*, 209 N. Y. 386, 389; *MVAIC* v. *Eisenberg*, 18 N Y 2d 1). It is noteworthy in this regard that in *Selles* v. *Smith* (4 N Y 2d 412) the Court of Appeals, in a pre-*Babcock* situation, refused to apply section 59 to a South Carolina accident, not because the statute could not have extra-territorial effect, but because New York law could not then be applied without the State in an action to recover damages resulting from a tort.

Even were the New York common law to be applied to this case, I believe that the plaintiffs made out a sufficient case to go to the jury. There was evidence from which the jury might find or reasonably infer that Arthur drove the station wagon at the defendant's request and for his benefit even though no compensation was being paid and no strict master-servant relationship existed (see *Nalli* v. *Peters*, 241 N. Y. 177, 179; *Selles* v. *Smith, supra*). The evidence taken in the light most favorable to the plaintiffs revealed that Arthur took the vehicle at the defendant's request and that in Florida the defendant used the vehicle for both his own business and pleasure.

The defendant contends that the station wagon had not been operated negligently and that he therefore could not be held liable regardless of whether the New York statutory or common law is to be applied. In *Babcock* the Court of Appeals held that there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. It noted that when the driver's exercise of due care in the operation of his vehicle is in issue: "the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place" (*Babcock* v. *Jackson*, 12 N Y 2d 473, 483, *supra*).

Section 20–123.1 of the General Statutes of North Carolina provides that the steering mechanism of every motor vehicle using the highways shall be maintained in good work-order, sufficient to enable its operator to control its movements and to operate it safely. Violation of this statute constitutes negligence per se and is actionable if the proximate cause of the injury (*Tysinger* v. *Coble Dairy Prods.*, 225 N. C. 717; *Bundy* v. *Belue*, 253 N. C. 31; *Stephens* v. *Southern Oil Co.*, 259 N. C. 456). A jury question was presented as to whether the statute had been violated in the operation of the station wagon and, if so, whether such violation was the proximate cause of the injury.

It is argued that the failure of the administrator to qualify in the State of North Carolina prevents the maintenance of the wrongful death action. In this case, the administrator was appointed by the Surrogate of Bronx County.

New York has required that foreign administrators obtain ancillary letters before bringing suit here based solely upon a policy of protecting resident creditors of the decedent against the withdrawal into another State of assets upon which they may rely for the payment of debts that may be due to them (*Wiener* v. *Specific Pharmaceuticals*, 298 N. Y. 346, 351; *Toronto Gen. Trust Co.* v. *Chicago, Burlington & Quincy R. R. Co.*, 123 N. Y. 37, 46–47). Similarly, North Carolina requires that an administrator qualify in that State before commencing an action there for wrongful death under its statute (*Hall* v. *Southern Ry. Co.*, 146 N. C. 345; *Graves* v. *Welborn*, 260 N. C. 688).

In this case none of the parties reside in North Carolina and there are no assets in that State which the administrator is seeking to recover. In such a situation, the letters of administration granted by a New York Surrogate are conclusive as to the authority of the administrator to bring the action (see *Leonard* v. *Columbia Steam Nav. Co.*, 84 N. Y. 48, 55; *O'Connor* v. *Huggins*, 113 N. Y. 511, 518; *Power* v. *Speckman*, 126 N. Y. 354, 357).

I would reverse the judgment and grant a new trial.

Ughetta, Acting P. J., Rabin and Hopkins, JJ., concur in majority memorandum; Benjamin, J., dissents in opinion, in which Brennan, J., concurs.

Judgment affirmed, without costs. No opinion.